258 P.2d 379

**PERKINS v. DRURY.**

No. 5520.

Supreme Court of New Mexico.

April 24, 1953.

Rehearing Denied June 29, 1953.

G. T. Watts, Roswell, for appellant.

Donald Brown, Roswell, for appellee.

SADLER, Chief Justice.

The defendant appearing before us as an appellant complains of a judgment rendered against him in favor of the plaintiff below suing individually and as next friend for her minor daughter two and one-half years old at time of trial who was severely bitten by a dog while on the premises of the defendant in the company of her parents.

The defendant owned certain property at 900 West Hobbs Street in the city of Roswell on which he maintained a home as well as an automobile repair garage which at the time in question was rented to other parties but was generally open to the public and as well to two cocker spaniel male dogs of defendant. These dogs were customarily kept in the immediate personal custody of defendant during daylight hours. Actually, at time the minor was bitten by the younger of them defendant already had arranged to give him to a third party but had not yet made delivery and it was still in the actual possession and on the premises of defendant.

About three weeks prior to the time of the attack on the minor child by the younger of the two dogs, the father of the minor had taken his car out to the garage to have some work done on it and the two boys operating the garage invited him to bring the car out again if he needed any work done on it. Thus it was that some three weeks later, the car needing minor repairs, he again took it out to this garage to have the work done, arriving there about 11 o'clock in the forenoon. He was accompanied by his wife and two minor daughters, one of them being Sharon Louise Perkins not yet two years old and the other Gloria Nell Perkins, her sister, about ten years of age.

Upon arriving at defendant's premises the father drove his car halfway into the completely open garage. There was no one present in the garage though he noticed

a workman on the "loader" standing on defendant's premises near by. The father alighted and raised the hood. The mother and two children also got out of the car. His wife stood by the husband's side watching him check the car; Gloria, the elder of the two children, stood near the center of the garage and the "baby Sharon", who was able to walk, upon leaving the car had toddled over to the side door on the east side of the building at its north end.

They had been in the garage but a short time, perhaps twenty minutes, when the father heard the baby cry out and her mother and little sister scream. Upon looking up, he heard the younger of the two dogs growling and saw him attacking the baby who was lying flat on her back with the dog snapping at her face.

The little sister was trying to pull the dog away from the attack it was making on the child. The father quickly ran around the front of his car to the scene of the attack by which time the mother had already reached the children. The baby was bleeding profusely. The man on the loader came over from where he was working some 40 feet away and said, "I will get the boss," which he did at once.

In the meantime, the dog had been driven away and the mother had picked up the child from the ground and was holding it in her arms. The defendant arrived presently and sought to reassure the parents by saying the injury appeared to be but "a little scratch" and that the dog had only recently been vaccinated. The parents immediately rushed the child to the hospital where the dog bite on the cheek appeared to be a deep cut in the shape of a cross. It took the doctor 45 minutes to treat the child's wounds and required 19 stitches, leaving permanent scars. The trial judge made findings touching the events just related in the evidence, as follows:

"3. For a long period of time prior to August 1, 1950 the Defendant, Drury, had owned two adult registered male Cocker Spaniel Dogs which were usually and customarily kept in his immediate personal custody during the daylight hours, one of which was named 'Pancho'; that shortly prior to August 1, 1950, the Defendant had made arrangements to dispose of the dog 'Pancho' by gift to a third party, but no delivery thereof had been made on August 1, 1950 and the dog remained in the exclusive possession of the defendant upon that date.

"4. That the dog 'Pancho', on August 1, 1950, and at all times material hereto, was possessed of a propensity or tendency toward viciousness, especially toward small children, which was brought about by a spirit of jealousy on the part of the animal, and for a long period of time prior to the said date

the defendant had actual knowledge, or in the exercise of reasonable care as an ordinarily prudent person, he should have known of the propensity toward viciousness on the part of the animal, and that, if permitted to roam at large the animal was likely to attack and injure small children, but at no time on or prior to August 1, 1950, did the defendant act in any manner to restrain the animal other than to give warning to members of his immediate family and to an employee not to permit their children to play in the vicinity where the dog might be.

"5. That the Defendant, by keeping or harboring the animal in question, with knowledge of its vicious propensity, and without taking steps to confine the animal, or otherwise protect against injury, should, in the exercise of reasonable discretion, have anticipated an injury of the type and character which actually occurred, and his failure to confine the animal, or take other steps to safeguard against injury, was the sole and proximate cause of the injuries which were inflicted upon the person of Sharon Louise Perkins, as hereinafter described.

"6. That on the late morning of August 1, 1950, the Plaintiff, in company with her husband and two minor daughters, one of whom was Sharon Louise Perkins, drove an automobile to the Defendant's premises for the purpose of repairs, and upon arrival all of the occupants, including the minor Sharon Louise Perkins, got out of the car and remained in the garage building where the Plaintiff's husband and the Plaintiff did some work on or about the automobile.

"7. That a few minutes after the Plaintiff arrived upon said premises the dog, 'Pancho', entered the building through the open doorway, where the minor child was playing and, without warning or provocation of any kind or character the animal attacked said minor, knocking her to the floor and biting her in and about the face, particularly the right cheek; that the attack aroused the immediate attention of the Plaintiff and her other minor daughter who immediately intervened and drove the animal away from the minor child but only after the injuries hereinafter described were inflicted.

"8. That two gaping wounds were inflicted in the right cheek of the minor, Sharon Louise Perkins, one slightly over one and one-half inches in length, and the other slightly over one-half inch in length; that the child was immediately brought to the office of a medical doctor who immediately administered a local anesthetic and ap-

plied sutures to draw the wounds together, which sutures were removed three days after the attack; that the minor child underwent severe pain and suffering almost constantly over a period of two weeks following the injury.

"9. That a maximum degree of recovery has been effected, but the minor child now suffers a permanent pliability defect to the flesh in the right cheek, a slight difference in size in the right and left cheeks exists and visible scars to the right cheek remain which are disfiguring in character."

The sole question raised on the appeal is whether the evidence supports the finding by the trial judge that the vicious propensities of the dog making the attack on the little child, under two years of age, were known to defendant. He held against him on the proposition and awarded judgment against defendant for $900 in favor of the infant and $95.09 in favor of the mother, individually, for damages suffered by her for medicines, drugs and for loss of time from employment. The damages awarded in neither instance are questioned, either as to amount or propriety. We have, then, only to consider whether there was sufficient evidence to sustain the finding that the dog's vicious nature was known to the defendant, a question about which we entertain no doubt.

We have sifted the testimony carefully and have no hesitancy in saying it supports the inference the trial judge drew that the defendant knew the dog was vicious and dangerous to children. That this was so is evidenced by frequent warnings he gave to others, including a former employee, and to his own daughter, to keep the children away from the dogs, or to guard them carefully when on his premises lest they be bitten or injured by them. True enough, usually if not invariably according to testimony of adverse witnesses answering suggestively leading questions on cross-examination, he coupled his warning with talk about the younger dog being jealous of the older one, thus causing frequent fights between them, during which there was danger the children might "accidentally" be bitten. But this effort to explain danger to children from the dogs became so stock an answer from adverse witnesses on which plaintiff's entire case as to this issue depended, as no doubt to cause the trial judge to paraphrase in his mind the famed Shakespearian quotation from Hamlet, to read: "Methinks he doth protest too much."

It is to be remembered that the defendant put on no evidence at all and stood on the trial court's action in overruling his motion for judgment when the plaintiff rested. Under such circumstances,

the defendant must bear a heavy burden. All testimony introduced by the plaintiff, with every inference it will reasonably bear, must be accepted as true. Furthermore, we will consider only the testimony which supports the judgment and reject the conflicting testimony in testing the substantial character of the evidence. City of Roswell v. Hall, 45 N.M. 116, 112 P.2d 505; Dickerson v. Montoya, 44 N.M. 207, 100 P.2d 904; Williams v. Engler, 46 N.M. 454, 131 P.2d 267; Sundt v. Tobin Quarries, 50 N.M. 254, 175 P.2d 684, 169 A.L.R. 586.

■■ There is little point to citing or quoting at length from cases on the question at issue before us. If the dog was vicious or possessed dangerous propensities and this fact was known to defendant, that ends the matter. We recently had before us a case in which damages were sought for a "dog bite." Torres v. Rosenbaum, 56 N.M. 663, 248 P.2d 662. But there is little in the case to aid us in the present appeal, and the same is true of Garcia v. Chavez, 54 N.M. 22, 212 P.2d 1052. It is not out of place at this point to observe, however, that the old doctrine of every dog being entitled to "one bite" is out of harmony with a modern humanitarian society. See Hill v. Moseley, 220 N.C. 485, 17 S.E.2d 676. The keeper of a dog must observe manifestations of danger from him to human beings from other traits than viciousness alone, short of actual injury to some person, and cannot neglect to keep him in restraint until, as in substance declared by an aroused judge, he has "effectually killed or mangled at least one person."

■ There can be little doubt the dog here involved had a vicious nature and that defendant knew such was the case. At times he kept the dog on a leash. He usually kept the two dogs in his immediate personal custody during daylight hours. The ferocious nature of the two dogs, especially the younger one, was evidenced by frequent fights in which he engaged with the older dog. While there is no evidence, it is true, of an attack on a person than the one made the basis of this action, the fact finder may infer the vicious nature of a dog from one act, especially if it be an attack on a person. Perazzo v. Ortega, 29 Ariz. 334, 241 P. 518. And that defendant was himself apprehensive of such an attack is fairly suggested by the frequent warning given to a former employee, his own daughter and others, to keep the children off the premises or under guard while there lest they be bitten by one of the dogs during frequent fights between them.

This, alone, was enough to render defendant liable for injury to the child for failure on the owner's part to restrain the dogs whether or not they entertained vicious propensities toward children. It

is likelihood of injury to persons from the dogs, while at large, whether the injury flow from anger, playfulness, or any other cause. See 3 C.J.S., Animals, § 148(c), page 1250; Owen v. Hampson, Ala.Sup., 62 So.2d 245; Dranow v. Kolmar, 92 N.J.L. 114, 104 A. 650; Crowley v. Groonell, 73 Vt. 45, 50 A. 546, 55 L.R.A. 876, 87 Am. St.Rep. 690.

In Owen v. Hampson, supra [62 So.2d 248], the court said:

"Based on a review of our cases, as well as those from other jurisdictions, it is our opinion that the law makes no distinction between an animal dangerous from viciousness and one merely mischievous or dangerous from playfulness, but puts on the owner of both the duty of restraint when he knows of the animal's propensities. Crowley v. Groonell, 73 Vt. 45, 50 A. 546, 55 L.R.A. 876; State [Evans] v. McDermott, 49 N.J.L. 163, 6 A. 653; Knowles v. Mulder, 74 Mich. 202, 41 N.W. 896; Hicks v. Sullivan, 122 Cal.App. 635, 10 P.2d 516; Mercer v. Marston, 3 La. App. 97; Hartman v. Aschaffenburg, La.App., 12 So.2d 282."

The owner's knowledge of vicious or dangerous propensities in his dog may be inferred from circumstances, positive proof of such knowledge not being required. Ciecierski v. Hermanski, 182 Ill.App. 113 and Rickett v. Cox, 297 Ky. 30, 178 S.W. 2d 830; Benke v. Stepp, 199 Okl. 119, 184 P.2d 615; Fullerton v. Conan, 87 Cal.App. 2d 354, 197 P.2d 59.

We have no statute in New Mexico, as do some states, making the owner of a dog an insurer against damages inflicted by it. Our only statute on the subject is 1941 Comp. § 49–104, making it unlawful to keep a dog known to be vicious. The common law is the test of liability in this case and the plaintiff has fully met the test in her proof.

The judgment is without error and should be affirmed.

It is so ordered.

COMPTON and COORS, JJ., concur.

McGHEE and LUJAN, JJ., dissenting.

McGHEE, Justice (dissenting).

The testimony upon which the majority rely to sustain the judgment came in response to leading questions requiring a yes or no answer as to whether the defendant had warned them the dog might bite children, ignoring the completion of the warnings brought out on cross-examination when the witnesses were given an opportunity to state the younger dog was very jealous of the older one, and if a fight occurred when the children were near they might be injured.

The authorities relied on in the majority opinion do not support the holding in this

case. I feel the majority opinion makes such a drastic change in the established law on animals, that such change can be best shown by setting out below an opinion submitted by me for the consideration of my brethren which the majority refused to approve. It reads as follows:

The plaintiff brought action for damages individually and as next friend of her minor daughter for personal injuries sustained by the daughter when attacked and bitten by a dog formerly owned by the defendant and still retained in his exclusive possession and immediate custody. From a judgment in favor of the plaintiff the defendant appeals.

In the forenoon of August 1, 1950, the plaintiff and her husband drove with their two minor daughters to a repair garage located on West Hobbs Street in the City of Roswell. The defendant maintained his home on the premises, but leased the repair garage thereon to other parties. Upon arrival at the garage the father drove the car part way into the building and the mother and father and both children got out of the car and remained in the garage. The garage operators were absent, and while waiting for them to return the mother and father worked for a few minutes on or about the car. While they were so engaged the little girls were standing about or playing in the garage, when the cocker spaniel dog kept by the defendant came to the open door of the garage and attacked the younger child, Sharon Louise, then about two years old. She was thrown to the floor and bitten on the right cheek when her older sister saw the disturbance and hurried to separate the dog from her. The older sister was holding the dog back from again attacking the child when the parents got around the car to them. There was a lacerated ragged tear on the right cheek of the child so attacked.

The trial court found the defendant had knowledge, or as a reasonable person should have had knowledge, that the dog had a tendency toward viciousness, especially toward small children, which tendency was brought about by jealousy; but that he made no effort to restrain the animal although he had warned members of his immediate family and an employee not to permit their children to play where the dog might be.

The primary contention of defendant is the court erred in finding the defendant knew, or as a reasonably prudent person should have known, the dog possessed vicious tendencies to attack human beings.

In this jurisdiction the common law remains unchanged respecting liability of an owner or keeper of a dog to one injured by the dog, and such owner or keeper is liable only where it is established he had knowledge of the vicious propensities of the dog.

3 C.J.S., Animals, § 151a; 2 Am.Jur. (Animals) Sec. 48.

The fair import of all of the testimony about the dog in question is the defendant had two dogs that were jealous of each other and they often fought; he frequently warned others not to allow their children to play around the dogs because if the dogs began to fight children nearby might be injured; there was no evidence the dog in question had ever attacked or threatened to attack any person prior to the attack upon the child in this case.

A former employee of the defendant testified the defendant had told him to watch his little boy because the dog might bite him, and that when the employee was working on the premises and his son was there with him he would lock up the dog; but these statements should not be given an exaggerated meaning by divorcement from the substance of the employee's testimony that the danger expressed was the dogs might fight and children near by might be bitten— not that the dog would attack a child under other circumstances.

Nowhere in the record before us is there any evidence the defendant knew his employee thought the dog might bite or otherwise injure children except when fighting with the other dog, or that he knew the employee would confine the dog when on the premises with his son. Nor is it contended the defendant is chargeable with imputed knowledge.

In Torres v. Rosenbaum, 1952, 56 N.M. 663, 248 P.2d 662, an action against an employer by an employee for injuries she received from a dog bite when she was sent on an errand to the home of a neighbor, we held the statement of a witness that the owner of the dog had told her the dog did not like Spanish people was not competent to show general reputation of the dog, nor to charge the employer with knowledge, actual or constructive, of the dog's vicious propensities. While the facts of the Torres case are unlike those now before us, its underlying principle is applicable here—that scienter cannot be established by statements or actions of others not brought home in some manner to the one on whom liability is sought to be imposed.

Pin-pointed, then, the question presented is whether knowledge on the part of a keeper of a dog that it is jealous of another dog kept by him and will fight such other dog and perhaps injure nearby children while so fighting, is notice the dog will, when alone, make an unprovoked assault upon a child.

We recognize the vicious or mischievous nature of a dog to inflict injury may be established by manifestations short of actual attack. 2 Am.Jur., Animals, Secs. 49 and 83; Emmons v. Stevane, 1909, 77 N.J.L. 570, 73 A. 544, 24 L.R.A.,N.S., 458; Twigg

v. Ryland, 1884, 62 Md. 380, 50 Am.Rep. 226; Godeau v. Blood, 1880, 52 Vt. 251. In the last cited case the classic statement of the doctrine is found, to wit:

" * * * The duty which the law casts upon the keeper of a malicious and dangerous domestic animal, is but the enforcement of a common moral duty, binding upon all men; that a man should so keep and use his own property as not to wrong and injure others. The formula used in text books and in forms given for pleadings in such cases, 'accustomed to bite', does not mean that the keeper of a ferocious dog is exempt from all duty of restraint until the dog has effectually mangled or killed at least one person. * * * "

However, co-existent with this doctrine is another long-recognized rule that it must be shown the keeper of a domestic animal had notice (or should, as a reasonably prudent man, have had notice) it would inflict injuries substantially similar, though not identical, to that which forms the basis of action against him. In 3 Restatement of Torts, Sec. 509, comment g, at p. 23, it is said:

" * * * It is not enough, however, that the possessor of the animal has reason to know that it has a propensity to do harm in one or more specific ways; it is necessary that he have rea-son to know of its propensity to do harm of the type which it inflicts."

Perhaps the earliest recognition of this rule is in Jenkins v. Turner (Eng.1695) 1 Ld.Raym. 109. There the plaintiff brought action on the case alleging the defendant's boar had killed a mare belonging to the plaintiff and that the boar had bitten other animals. The plaintiff said the declaration was not objectionable because cured by the verdict, but the court said:

" * * * But our case is not so, for if evidence had been given, that the boar had used to bite any animal, and that he afterwards bit the plaintiff's mare, the jury would think, that this was a foundation good enough for them to find for the plaintiff. But the law is contrary, for unless the boar had used to bite horses, sheep, or such like valuable animals, it would be no offense in the proprietor to keep the boar, notwithstanding that he had bit frogs, &c. * * * "

In Osborne v. Chocqueel (Eng.1896) 2 Q.B. 109, the plaintiff was bitten by a bull-dog belonging to defendant. There was no evidence the dog had bitten or attempted to bite any other person, but only that defendant knew it had chased and worried a goat. Lord Russell of Killowen, C. J., there said:

"There was no evidence before the * * * judge that the dog had on any

previous occasion manifested any tendency to bite mankind. It never had bitten or attempted to bite anybody; its record was quite clean except for the unhappy incident of the goat. Was the judge entitled to arrive at the conclusion that the defendant was liable? That leads to the question, Was there sufficient evidence of scienter to make the defendant liable? I think there was not. *. * * the county court judge has not found that the dog, before it bit the plaintiff, had any ferocious disposition towards mankind; he has only found that it was ferocious, and ferocious to the knowledge of the defendant. As I have said, there was no evidence upon which it could be found that the dog had previously bitten or attempted to bite mankind. I am, therefore, of opinion that the judgment was wrong."

In Tupper v. Clark, 1870, 43 Vt. 200, it was held the defendant was not liable for injury caused to plaintiff's horse by defendant's mare when she went through a fence between the property of plaintiff and defendant and kicked the plaintiff's horse, although the defendant knew his mare would kick other horses when she was in heat, it appearing the animal was not in heat at the time of the injury.

Notice that a dog is ferociously disposed toward cattle is not notice he will attack mankind. Twigg v. Ryland, supra; and, conversely, notice that a dog will run after and bark at bicycles, or a person riding a bicycle, does not charge the owner with knowledge the dog will bite or attempt to bite horses on the highway. Swanson v. Miller, 1906, 130 Ill.App. 208. See also, 2 Cooley on Torts (4th ed. 1932) Sec. 266; Emmons v. Stevane, supra; and Cockerham v. Nixon, 1850, 33 N.C. 269.

The following cases have held the owner's knowledge his dog was accustomed to bite dogs or other animals is not notice he will attack humans: Fowler v. Helck, 1939, 278 Ky. 361, 128 S.W.2d 564; Hensley v. McBride, 1931, 112 Cal.App. 50, 296 P. 316; Norris v. Warner, 1894, 59 Ill.App. 300; and Keightlinger v. Egan, 1872, 65 Ill. 235.

In the instant case the only proof was that the dog was jealous of the other dog kept by defendant and they frequently fought each other. It is virtually a matter of common knowledge that persons near dogs that are fighting are subject to the risk of injury to themselves. And if the present injuries had been incurred under similar circumstances, doubtless the defendant would have been liable. For similar holding, see Hartman v. Aschaffenburg, La. App.1943, 12 So.2d 282, affirmed La.App., 13 So.2d 532. But we do not feel notice that a dog will fight with another dog and possibly inflict injuries on nearby children while so doing, is notice the dog will, when

alone, make a vicious and unprovoked assault on a child. Exhaustive research has revealed no cases in which recovery was permitted where the facts comprising the notice of dangerous propensities and those of actual injury were so divergent.

We are in sympathy with the remarks of Lord Russell in Osborne v. Chocqueel, supra, that:

"* * * I do not say that the law is in a satisfactory condition; I think it is unsatisfactory. It would, in my opinion, be more in accordance with sound reason and principle to make a man responsible for what his dog did— that he should take the risk of keeping it. We have not, however, to decide whether the law in this respect is satisfactory or unsatisfactory, but only to say what it is as applied to the particular case before us. * * * It is impossible, looking at the long series of cases, extending over many years, in which the doctrine of scienter has been applied and acted upon, to arrive at any other conclusion than that, in actions for injury sustained by man through the bite of a dog, the scienter which it is necessary to shew is that the dog had a ferocious disposition towards mankind—* * *"

Until our Legislature has seen fit to impose liability on owners and keepers of dogs for injuries inflicted by them regardless of the doctrine of scienter, we are bound by the rules of the common law, and must rule in the instant case that the judgment against defendant cannot be sustained.

Those matters wherein my view of the case differs from that of the majority are contained in the foregoing paragraphs, and, in conclusion, I wish only to remark that regardless of the fact the plaintiff had to make out a part of her case by calling adverse witnesses, still, as I view the law, she was not thereby relieved from the duty of making out a case. I believe the majority arrive at their decision by actually relieving the plaintiff of the burden of proof.

For the reasons given, I dissent.

LUJAN, J., concurs.