1999-NMCA-151

994 P.2d 50

**Deborah SMITH, Individually and as Next Friend of her Daughter, Kristyn Smith, Plaintiff–Appellee,**

v.

**VILLAGE OF RUIDOSO, a Municipal Corporation, Defendant– Appellant.**

**No. 19,476.**

Court of Appeals of New Mexico.

Nov. 5, 1999.

Charles E. Hawthorne, Charles E. Hawthorne, Ltd., Ruidoso, for Appellee.

Richard E. Olson, Karolyn King Nelson, Hinkle, Cox, Eaton, Coffield & Hensley, L.L.P., Roswell, for Appellant.

## OPINION

SUTIN, Judge.

{1} The Village of Ruidoso appeals the general jury verdict awarding damages in favor of Plaintiff's minor daughter, Kristyn, for dog-bite injuries inflicted by a narcotics-detection dog owned by the Village Police Department. The Village raises four issues: whether the trial court erred (1) in instructing the jury under UJI 13–506 NMRA 1999, a strict liability dog-bite instruction; (2) in submitting Plaintiff's contract claim to the jury; (3) in submitting Plaintiff's claims for future pain and suffering; and (4) awarding

mediation fees as costs. We conclude that the trial court erred in instructing the jury under UJI 13–506, because that instruction does not state a negligence theory of recovery as required under the Tort Claims Act; in submitting Plaintiff's contract claim to the jury; and in awarding mediation fees as costs. We reverse and remand for a new trial in negligence.

## BACKGROUND

{2} As Kristyn Smith walked down the block after school, Fanta attacked and bit her in the face. The resulting lacerations required stitches, a scar revision, and two dermabrasion procedures that were performed by a plastic surgeon, leaving a scar.

{3} Fanta, a German Shepard, was owned by the Department. When the Department acquired Fanta, the Department issued a press release announcing the addition of Fanta "to the staff" of the Department. The release also said that Fanta was "a Commissioned member of the Department," who would be seen with her "human partner," Officer Layher.

{4} Fanta lived with Officer Layher. The Layher property was posted with a sign that read, "Caution/Police Dog." On the afternoon of the accident, the officer was getting ready to go to work. When he heard his wife come in the house, he hollered something to her about putting Fanta in the car. Apparently, when Fanta heard the word "car," she reacted with her typical enthusiasm for work and dashed to the front door. Eluding Mrs. Layher's attempt to grab her collar, Fanta ran out of the house and into the street, where she proceeded to attack Kristyn, who happened to be walking by at that moment.

{5} Officer Layher contacted Kristyn's mother, Deborah Smith (Plaintiff), who then took Kristyn to the hospital for treatment. The Police Chief went to the hospital and indicated to Plaintiff and the hospital administrator that the Department would pay Kristyn's medical bills, saying that the Department would "take care of it." The Chief's written report of the incident states that he "advise[d] that medical costs would be assumed by the Ruidoso Police Department." In a letter to a third party, the Chief wrote: "arrangements have been made to assume Kristyn's total medical expenses." The Department paid for Kristyn's medications and her initial treatment at the hospital, but did not pay any of the other medical bills incurred in Kristyn's treatment.

{6} Plaintiff sued the Village, claiming that the Department's negligent training, handling, control, and storing of Fanta constituted negligent maintenance and operation of police equipment under the Act; that the Department breached its contract with Plaintiff when it failed to pay Kristyn's medical bills; and that the Chief misrepresented that the Department would pay Kristyn's medical bills. Plaintiff sought damages for medical expenses, as well as for past and future pain and suffering, and disfigurement.

{7} The trial court granted summary judgment in the Village's favor on the misrepresentation claim and denied the motion as to Plaintiff's negligence and contract claims. At trial, the court gave UJI 13–506 (liability of dog owner) together with an ordinary care instruction, but did not give any instruction on negligence. The jury returned a general verdict awarding $50,000 to Plaintiff. Plaintiff filed a motion to recover her costs, including the cost of a voluntary pretrial mediation. Over the Village's objection, the trial court awarded $708.91 for the pretrial mediation. The Village appeals.

## DISCUSSION

### I. DOG–BITE LIABILITY

{8} The instruction at issue in this case, UJI 13–506, embodies New Mexico's doctrine of liability of dog owners for injuries caused by vicious dogs. The instruction reads:

An owner of a dog is liable for damages proximately caused by the dog if the owner knew, or should have known, that the dog was vicious or had a tendency or natural inclination to be vicious.

[The owner of such a dog is not liable to the person injured, if the injured person had knowledge of the propensities of the dog and wantonly excited it or voluntarily and unnecessarily put himself in the way of the dog.]

■ {9} The Village argues that UJI 13–506 includes elements of strict liability and

that under the Tort Claims Act, NMSA 1978, Section 41–4–2(B) (1976), the state and governmental entities are immune from claims grounded on strict liability. Thus, the Village asserts that reversal of the judgment against it is required as a matter of law. To overcome governmental immunity, Plaintiff relies on NMSA 1978, Section 41–4–6 (1977) of the Tort Claims Act, which waives immunity for negligence in the operation or maintenance of equipment. It reads:

> The immunity granted pursuant to Subsection A of Section 41–4–4 NMSA 1978 does not apply to liability for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building, public park, machinery, equipment or furnishings. Nothing in this section shall be construed as granting waiver of immunity for any damages arising out of the operation or maintenance of works used for diversion or storage of water.

Under Section 41–4–6, Plaintiff must assert and prove a negligence theory of recovery.

{10} To prevent Plaintiff's claim, the Village relies on both the Act's bar to strict-liability claims and on the State's immunity from claims not sounding in negligence. New Mexico has not waived its immunity to permit claims in strict liability. "The Tort Claims Act in no way imposes a strict liability for injuries upon governmental entities or public employees." Section 41–4–2(B); *see also Saiz v. Belen Sch. Dist.*, 113 N.M. 387, 402, 827 P.2d 102, 117 (1992). We must decide whether UJI 13–506 is a negligence theory. If UJI 13–506 is not a negligence theory, we must then decide whether that resolves the liability issue before us.

### A. *UJI 13–506 Is Not a Negligence Instruction*

■ {11} The language of UJI 13–506 contains aspects of both negligence and strict liability. The instruction imposes liability on a dog owner without regard to the owner's exercise of ordinary care in taking precautions to prevent the harm. In this way, the instruction resembles strict liability. *See*

*Saiz,* 113 N.M. at 402, 827 P.2d at 117 ("The feature of strict liability that distinguishes it from negligence is that the reasonableness of acts or omissions of the party to be charged ... is not a consideration."). On the other hand, the instruction also requires proof that the owner knew or should have known that the dog had vicious propensities before the owner may be held liable for any injuries the dog causes. This language is often used in considering negligent conduct.

{12} The trial court also instructed the jury on ordinary care. It appears that the parties drew upon language in *Perkins v. Drury,* 57 N.M. 269, 258 P.2d 379 (1953). Relying on the common law dog-bite doctrine, *Perkins* held an owner's knowledge of his dog's vicious propensity in its relationship with another dog sufficient to render the owner liable for injuries inflicted on a child. *Id.* at 274, 258 P.2d at 382. The appellate court in *Perkins* referred to the *trial* court's finding that conflated ordinary care and strict liability. *Id.* at 272, 258 P.2d at 380 ("[T]he defendant had actual knowledge, or in the exercise of reasonable care as an ordinarily prudent person, he should have known of the propensity toward viciousness on the part of the animal."). Thus, in the present case, dog-bite liability went to the jury on only UJI 13–506 with an ordinary care instruction.

{13} The record is unclear as to how the trial court or the parties understood the theory or theories of recovery on which this case was to be decided. On appeal, the Village argues that the ordinary care instruction was a stray instruction, yet purposeful in that it "explained the context in which an owner would know or should know of a dog's dangerous or vicious propensities." Plaintiff views the combination of instructions as consistent with her negligence theory of the case.

{14} We are convinced that UJI 13–506 is not a negligence instruction. We reach this decision from an analysis of decisions in other jurisdictions, the Restatement (Second) of Torts (1977) (the Restatement), and our Uniform Jury Instructions. *See generally* Ward Miller, Annotation, *Modern Status of Rule of Absolute or Strict Liability for Dogbite,* 51

A.L.R.4th 446 (1987). Likewise, we are persuaded that UJI 13–506 is a strict-liability instruction.

{15} Other jurisdictions considering this issue conclude that dog-bite instructions requiring knowledge before imposing liability are strict-liability instructions. *See, e.g.,* *DeRobertis v. Randazzo,* 94 N.J. 144, 462 A.2d 1260, 1266–67 (1983) (explaining that under the common law, if a plaintiff proves scienter, a dog owner is absolutely liable); *Westberry v. Blackwell,* 282 Or. 129, 577 P.2d 75, 76 (1978) (en banc); *Arnold v. Laird,* 94 Wash.2d 867, 621 P.2d 138, 140 (1980) (en banc); *Abelseth v. City of Gillette,* 752 P.2d 430, 433 (Wyo.1988); *cf. Kyle v. Commonwealth,* No. 9201635, 1994 WL 879700 (Mass.Super.Ct. June 10, 1994) (holding Commonwealth immune from dog-bite action brought under statute imposing liability without scienter).

{16} In addition, Section 509 of the Restatement, which contains language essentially the same as our UJI 13–506, is considered by its authors to be a strict-liability theory. Under Section 509(1), the "possessor of a domestic animal that he knows or had reason to know has dangerous propensities abnormal to its class, is subject to liability for harm done by the animal to another, although he has exercised the utmost care to prevent it from doing the harm." Comment i to Section 509 describes this section as imposing strict liability.

{17} "Negligence" is specifically defined in two UJIs. One is UJI 13–908 NMRA 1999, relating to the Federal Employer's Liability Act. The other, UJI 13–1601 NMRA 1999, relates to negligence "of all persons." Both instructions contain the words "ordinary care." "Ordinary care" is defined in UJIs 13–910 and 13–1603 NMRA 1999. The ordinary care instruction contained in UJI 13–1603 is available for use in conjunction with various instructions that, unlike UJI 13–506, contain the words "ordinary care."[1] UJI

13–506 neither defines a particular duty of care nor requires the jury to be instructed on ordinary care, as do negligence-related instructions.

{18} In sum, UJI 13–506 is not a negligence theory of recovery. Rather, UJI 13–506 imposes strict liability once knowledge is proven. UJI 13–506 cannot be given to the jury in an action for relief under the Section 41–4–6 waiver of immunity because UJI 13–506 does not embody a negligence theory of recovery and because only negligence claims may be pursued under Section 41–4–6. Consequently, the trial court erred in allowing the jury to consider whether the Village was negligent under Section 41–4–6 based on the theory of recovery in UJI 13–506. With UJI 13–506 as the sole liability instruction given to the jury and with no negligence theory of recovery properly before the jury as required in Section 41–4–6, the Village was entitled to a directed verdict in its favor based on immunity under the Act.

{19} Although we reverse on the submission of UJI 13–506 to the jury, our review of the dog-bite liability issue is not yet complete. We must consider whether Plaintiff should be allowed to sue in negligence. For reasons that we explain below, we conclude that a dog-bite victim may pursue negligence claims against a municipality where the victim's complaint and the evidence bring such a claim within Section 41–4–6. We further conclude that Plaintiff may assert a negligence claim on remand.

**B.** *Negligence Is a Proper Theory of Recovery for Injuries From a Dog Bite*

{20} At the time this case was tried, UJI 13–506 appears to have been the sole theory of dog-bite liability against dog owners in New Mexico. The decision in *Aragon v. Brown,* 93 N.M. 646, 603 P.2d 1103 (Ct. App.1979), forbade negligence claims in dog-bite cases. In *Aragon,* a seventeen-year-old

---

1. *See* UJI 13–1110 NMRA 1999 (duty of patient); UJI 13–1201 NMRA 1999 (duty of operator using highway); UJI 13–1207 NMRA 1999 (duty of passenger); UJI 13–1305 NMRA 1999 (duty to trespasser); UJI 13–1309 NMRA 1999 (duty to visitor); UJI 13–1314 NMRA 1999 (landlord's duty regarding repairs); UJI 13–1317 NMRA 1999 (duty of city regarding sidewalks and streets); UJI 13–1318 NMRA 1999 (slip and fall); UJI 13–1402 NMRA 1999 (duty of supplier); UJI 13–1410 NMRA 1999 (manufacturer's duties); UJI 13–1413 NMRA 1999 (manufacturer and lessor; duty to inspect); UJI 13–1415 to –1416 NMRA 1999 (duties of suppliers).

boy was bitten by a friend's St. Bernard in the friend's house. The boy and his father sued. Over the plaintiffs' objections, the trial court instructed on theories of negligence, contributory negligence, and trespass. The jury returned its verdict for the defense. Plaintiffs appealed, contending that the trial court erred by giving these instructions. The plaintiffs argued that the only proper instruction was UJI 5.3 NMRA 1966, which contained New Mexico's dog-bite doctrine. UJI 5.3 read:

> In order for the owner of a dog to be liable to a person injured, the burden of proof is on the plaintiff to establish that the dog was vicious or had a natural inclination or tendency to be dangerous and that the owner had knowledge thereof.
>
> In determining the character of the dog, you may consider evidence of the general reputation of the dog, as well as evidence of any prior acts and conduct of the dog.
>
> In determining the knowledge of the owner, you may consider evidence of the manner in which the owner maintained the dog, his knowledge of prior acts and conduct of the dog, and any previous warnings issued to others by the owner.
>
> ("The owner of such a dog is not liable to the person injured if the injured person has knowledge of the character of the dog and wantonly excites it or voluntarily and unnecessarily puts himself in the way of the dog.")

{21} UJI 5.3 was given in *Aragon* at the plaintiffs' request; negligence, contributory negligence, and trespass instructions were given at the defendant's request. *Aragon* held that the trial court erred in giving the negligence, contributory negligence, and trespass instructions. These instructions, the Court said, injected false issues into the case, which "could only have confused the jury." *Id.* at 647, 603 P.2d at 1104.

{22} *Aragon* disposed of the entire issue of the propriety of negligence as a theory of recovery in one paragraph, with little explanation. The Court held that the use of UJI 5.3 was mandatory and that "[t]he instruction states the entire law of liability and relief from liability in connection with dog-bite injuries" and "encompasses all the necessary elements of determining liability or non-liability in dog-bite cases." *Id.*

{23} The significance of *Aragon* to the case before us is that if, in a dog-bite case using UJI 13–506, a plaintiff is precluded from presenting a negligence claim to the jury, then that plaintiff would not be able to sue under the Act and would be left without a remedy even where the governmental entity may be negligent. But *Aragon* does not bind us here because the procedural posture in *Aragon* is significantly different than that before us today. *See Bogle Farms, Inc. v. Baca*, 1996–NMCA–051, ¶¶ 19–20, 122 N.M. 422, 925 P.2d 1184 (suggesting that cases in a different procedural posture are not authority for the case at bar). Unlike the case before us, the defendant—not the plaintiff—in *Aragon* sought the negligence instruction, as well as the instruction on contributory negligence. The plaintiff in *Aragon* did not assert or want to pursue a negligence theory of recovery. *See Enriquez v. Cochran*, 1998–NMCA–157, ¶ 71, 126 N.M. 196, 967 P.2d 1136 (explaining that "a defendant cannot require that an instruction on a particular theory of liability be given over plaintiff's objections"). At the time of *Aragon*, contributory negligence barred a plaintiff's recovery. The court's and parties' considerations were focused on theories of recovery and defenses different than those in the present case. Because *Aragon* was presented to the court in a significantly different way and involving a significantly different law of negligence (contributory rather than comparative) than the case we must decide and the law of negligence today, its holding is not binding in this case. To the extent *Aragon* may be read to preclude a negligence claim against a dog owner, it is overruled.

{24} We can think of no persuasive reason why a negligence theory of recovery for harm caused by dog bites should not be available to victims of such harm when circumstances justifying such a claim exist. Common law negligence applies in New Mexico. *See* UJI 13–1601. Aside from *Aragon*, which is not binding, owners of dogs that attack or bite are nowhere specifically excluded from the reach of the law of negligence in New Mexico.

{25} Several jurisdictions have applied common law ordinary negligence as well as negligence in the control or confinement of domestic animals (mainly horses) in dog-bite circumstances. *See, e .g., Williams v. Johnson,* 781 P.2d 922, 923 (Wyo.1989); *Beeler v. Hickman,* 50 Wash.App. 746, 750 P.2d 1282, 1286 (1988); *Chambliss v. Gorelik,* 52 Wis.2d 523, 191 N.W.2d 34, 37 (1971); *see also Nelson v. Hansen,* 10 Wis.2d 107, 102 N.W.2d 251 (1960) (interesting discussion of the issues).

{26} In addition, jurisdictions that have followed the common law dog-bite doctrine have adopted Section 518 of the Restatement, which recognizes that a dog owner can be liable in negligence for harm caused by the owner's dog even when the owner had no reason to know that the dog had vicious tendencies. Section 518 reads:

> Except for animal trespass, one who possesses or harbors a domestic animal that he does not know or have reason to know to be abnormally dangerous, is subject to liability for harm done by the animal if, but only if,
>
> (a) he intentionally causes the animal to do the harm, or
>
> (b) he is negligent in failing to prevent the harm.

{27} Thus, we conclude that a negligence claim is appropriate where the dog owner lacks knowledge of the dog's vicious propensities and ineffectively controls the animal "in a situation where it would reasonably be expected that injury could occur." *Arnold,* 621 P.2d at 141; *see also DeRobertis,* 462 A.2d at 1266 ("If either the dog is not vicious or the owner does not know of its vicious propensities, then negligence, not absolute liability, applies."); *Griner v. Smith,* 43 N.C.App. 400, 259 S.E.2d 383, 388 (1979) ("The owner of a domestic animal is chargeable with knowledge of the general propensities of certain animals and he must exercise due care to prevent injury from reasonably anticipated conduct."); *Westberry,* 577 P.2d

at 76 ("Failure to confine or control . . . can give rise to a cause of action in negligence.").

{28} A law enforcement officer, being a public employee, can be sued for negligent conduct in the operation or maintenance of any motor vehicle, aircraft, or watercraft, under NMSA 1978, Section 41–4–5 (1977), *see Wilson v. Grant County,* 117 N.M. 105, 106, 869 P.2d 293, 294 (Ct.App.1994), and can also be sued for personal or bodily injury resulting from assault, battery, or the other enumerated tortious conduct under NMSA 1978, Section 41–4–12 (1977), *see Methola v. County of Eddy,* 95 N.M. 329, 333–34, 622 P.2d 234, 238–39 (1980); *Caillouette v. Hercules, Inc.,* 113 N.M. 492, 496, 827 P.2d 1306, 1310 (Ct.App.1992). Law enforcement officers may also be sued for negligence in "the operation or maintenance of . . . equipment" under Section 41–4–6.[2] If the evidence admitted during retrial supports a negligence theory of recovery, then an instruction consistent with the applicable portions of Section 518 should be given to the jury. Absent direction to the contrary, civil decisions of this Court are presumed to operate retroactively. *See Stein v. Alpine Sports, Inc.,* 1998–NMSC–040, ¶ 7, 126 N.M. 258, 968 P.2d 769. In the present case, we believe it is appropriate that our decision today be applied retroactively such that Plaintiff will be able to assert a negligence claim on remand.

## II. *THE CONTRACT CLAIM*

{29} The jury was instructed that "[i]n this case, the parties agree that Chief Swenor indicated the Village of Ruidoso would pay the medical expenses at Lincoln County Medical Center. What is in dispute is whether a binding contract was made between the parties, and, if so, the terms of that contract."

{30} The Village argues that the Chief's verbal and written statements that the Department would pay Kristyn's medical bills were gratuitous, that there existed no bargained-for exchange and, therefore, no consideration to support the formation of a con-

---

2. We do not today consider the issues whether Officer Layher (1) was acting within the scope of his duties, and (2) in the operation or maintenance of equipment. While raised during the course of the proceedings in the trial court, these issues were not decided by the trial court and we leave these issues for determination on retrial.

tract. Plaintiff argues that the Chief's statements constituted an offer, that the offer was accepted when Plaintiff submitted the bills to the Village, and that mutual assent resulted when the Village paid all of the expenses incurred up to a certain point.

{31} Plaintiff characterizes the alleged contract as a unilateral contract, citing *Strata Prod. Co. v. Mercury Exploration Co.,* 1996–NMSC–106, 121 N.M. 622, 916 P.2d 822. *Strata Production* involved a contract dispute over a written farmout agreement that provided for one party's acceptance by performance, namely, drilling a certain test well. The court held that this agreement was "a traditional unilateral contract, in which the offeror makes a promise in exchange, not for a reciprocal promise by the offeree, but for some performance." *Id.* at 627, 916 P.2d at 827. In the present case, the Chief's statement that the Department would take care of the charges was not a promise in exchange for some performance by Plaintiff; it was not a unilateral contract.

{32} We agree with the Village that there was no consideration to support the formation of a contract.

{33} Consideration is essential to the enforcement of a promise. *See Romero v. Earl,* 111 N.M. 789, 791, 810 P.2d 808, 811 (1991). Consideration is the bargained-for exchange between the parties. *See id.* (explaining that consideration must be "bargained for by the parties. Something is bargained for 'if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise.' ") (citation omitted, quoting Restatement (Second) of Contracts § 71 (1979)). Thus there will be no consideration if there is no bargaining and exchange.

{34} This case falls into the "most significant class of promises unenforceable for lack of consideration[:] purely gratuitous (or gift) promises—promises for which there has been no exchange at all." 1 E. Allan Farnsworth, *Farnsworth on Contracts* § 2.5, at 81 (2d ed.1998); *see also* 2 Joseph M. Perillo and Helen Hadjiyannakis Bender, *Corbin on Contracts* § 5.2, at 17 (rev. ed.1995) (explaining that "consideration is designed primarily to protect the promisor from being compelled to perform donative promises"). Here, there was no bargaining, and no exchange between the parties: The Village neither sought nor received anything from Plaintiff in return for its promise to pay Kristyn's medical bills.

{35} Plaintiff argues that she agreed to forbear from filing suit against the Village in exchange for the Village's promise to pay Kristyn's medical bills. Although forbearance may amount to consideration in some cases, it will only serve as consideration where there is "either an express agreement to forbear ... or where the circumstances otherwise suggest that a contract ought to be enforced by implying such an agreement." *Spray v. City of Albuquerque,* 94 N.M. 199, 200–01, 608 P.2d 511, 512–13 (1980). Here, when the Chief told Plaintiff that the Department would take care of the medical bills, the parties did not discuss forbearance from suit at all, let alone come to an express agreement. Because nothing in the circumstances surrounding the making of the promise suggests anything but generosity or a simple sense of moral obligation on the part of the Village when making its promise to pay, we will not imply an agreement to forbear. *See* 17A Am.Jur.2d *Contracts* § 168 (2d ed. 1991) ("The general rule is that a mere moral obligation, without anything more, is not a sufficient consideration for an executory promise."). Because there existed no bargained-for exchange to obligate the Village to pay Kristyn's medical expenses, we hold that no enforceable contract was formed.

{36} We note that the Village alludes to lack of mutual assent as another ground for reversal. We will not address mutuality because the Village did not provide authority or argument to support its position. *See In re Adoption of Doe,* 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) ("to present an issue on appeal for review, an appellant must submit argument *and authority* ").

{37} In the Village's motion for judgment notwithstanding the verdict, the Village sought relief on the ground, among others, that the trial court erred in submitting the contract issue to the jury. The court's order denying the motion stated:

6. Even if it was error to instruct the jury on the contract theory, it was harmless error insofar as the jury was thoroughly instructed that if they found that the Defendant was liable for breach of contract, they could find damages to the Plaintiff only to the extent of unpaid medical bills.

7. It is clear from the jury's verdict, they did not consider the liability against the Defendant as being one of breach of contract, but of personal injury instead. The record shows that Plaintiff sought $2,378.65 in unpaid medical bills. The verdict was for $50,000. Although the even $50,000 amount of the verdict might give the impression that the jury may not have included the medical bills, and thus may have rejected the contract theory, we do not accept that conclusion. The jury could have included the medical bills in the verdict. Because the jury should not have been instructed on Plaintiff's contract claim, and because the jury could have awarded contract damages in this case, we also reverse on this issue. *See Hoggard v. City of Carlsbad,* 121 N.M. 166, 171, 909 P.2d 726, 731 (Ct.App. 1995) (holding that remand is required when a party submits alternative theories for relief, but only submits a general verdict form, and, when the appellate court finds insufficient evidence of one theory).

### III. *AWARD OF DAMAGES FOR FUTURE PAIN AND SUFFERING*

{38} The Village contends that Plaintiff failed to present a medical expert's opinion that Kristyn would endure either physical or emotional pain or suffering in the future. As a result, the Village argues the trial court erred in allowing the jury to consider an award of damages for future pain and suffering.

{39} In particular, the Village contends that the future pain and suffering from Kristyn's scar and scar revision procedures are subjective and not apparent from the injury itself, and therefore require expert medical testimony. *See Rael v. F & S Co.,* 94 N.M. 507, 511–12, 612 P.2d 1318, 1322–23 (Ct.App. 1979) (reasoning that expert medical testimony is required to justify an instruction on

future pain and suffering where the injury is subjective). During the settling of jury instructions, the Village argued only that the evidence of future pain and suffering was insufficient. The Village did not argue that medical expert testimony was necessary to prove future damages. At oral argument, the Village raised another issue not addressed at trial, that is, whether the trial court erred in permitting the jury to consider both disfigurement and future pain and suffering. The Village failed to preserve these arguments for appellate review, and we therefore decline to address them. *See Woolwine v. Furr's, Inc.,* 106 N.M. 492, 496, 745 P.2d 717, 721 (Ct.App.1987).

### IV. *AWARD OF COSTS*

{40} The prevailing party in a civil action is to be awarded costs unless the court orders otherwise for good cause shown. *See* NMSA 1978, § 39–3–30 (1966). In addition, Rule 1–054(E) NMRA 1999 allows costs to be awarded. No statute or Supreme Court rule specifies all of the various types of expenses that are or are not recoverable as costs. *See Dunleavy v. Miller,* 116 N.M. 353, 362, 862 P.2d 1212, 1221 (1993) ("[N]either the rule nor the statute specifies what items may be recovered."). However, rules of at least one judicial district do specify recoverable and nonrecoverable costs. *See e.g.,* LR2–302 and –505 (Second Judicial District); *see also Gillingham v. Reliable Chevrolet,* 1998– NMCA–143, ¶ 29, 126 N.M. 30, 966 P.2d 197 (noting that certain expenses are generally not recoverable under LR2–302(D)). This action arises out of the Twelfth Judicial District Court, which has no rule approved by the Supreme Court that specifies what costs are or are not recoverable.

{41} The assessment of costs is entrusted to the sound discretion of the court. *See Mascarenas v. Jaramillo,* 111 N.M. 410, 415, 806 P.2d 59, 64 (1991); *In re Adoption of Stailey,* 117 N.M. 199, 203, 870 P.2d 161, 165 (Ct.App.1994). We will not interfere with an award of costs, absent a showing of an abuse of discretion. *See Stailey,* 117 N.M. at 203, 870 P.2d at 165. However, the court's discretion is not unlimited. *See Tedford v. Gregory,* 125 N.M. 206, 216,

959 P.2d 540, 550 (Ct.App.1998). The court has discretion to award necessary and reasonable costs incident to the prosecution or defense of the action. *See Dunleavy*, 116 N.M. at 362–63, 862 P.2d at 1221–22; *Gillingham*, 1998–NMCA–143, ¶ 29, 126 N.M. 30, 966 P.2d 197. But that discretion is to be exercised sparingly "when considering expenses not specifically authorized by statute and precedent." *Dunleavy*, 116 N.M. at 363, 862 P.2d at 1222; *Gillingham*, 1998–NMCA–143, ¶ 29, 126 N.M. 30, 966 P.2d 197. If a trial court taxes unusual items as costs, it should explain the circumstances justifying the award. *See Gillingham*, 1998–NMCA–143, ¶ 29, 126 N.M. 30, 966 P.2d 197 (requiring the trial court to "explain[ ] the unusual nature of the circumstances" justifying the award); *Lopez v. American Airlines, Inc.*, 1996–NMCA–088, ¶ 14, 122 N.M. 302, 923 P.2d 1187 (requiring the trial court to state the reasons for taxing unusual items as costs).

{42} Plaintiff and the Village agreed to attempt settlement through mediation and retained a mediator. The mediation did not result in settlement. After Plaintiff prevailed at trial, she requested the trial court to award, and the court did award, her share of the mediator's fee. The record does not disclose whether this expense was unusual as an item of cost or the circumstances justifying the award. No reported New Mexico decision has addressed whether a mediator's fee may be taxed as a cost and no statute controls. We agree with the Village that the mediator's fee should not, in this case, be taxed as a cost, and we reverse on this issue.

{43} The mediation was conducted pursuant to the agreement of the parties, not by order of the court. We do not think that, with respect to mediations conducted pursuant to an agreement of the parties, the expense of the mediator's fee should be a recoverable cost, absent an enforceable agreement permitting the award of the mediator's fee expense as a cost. This view fits with the Supreme Court's reluctance, as well as our own, to expand the list of recoverable costs, and our admonitions to trial courts to carefully, cautiously, and sparingly exercise their discretion when considering expenses not authorized by statute or precedent. *See, e.g., Dunleavy*, 116 N.M. at 362–63, 862 P.2d at 1221–22. We do not address the question of whether the expense of a mediator's fee is an awardable cost in court-ordered mediations.

## CONCLUSION

{44} The common law dog-bite doctrine embodied in UJI 13–506 does not sound in negligence. Therefore, the Village is immune from an action based on that recovery theory. However, Plaintiff is entitled to pursue a negligence claim against the Village under Section 41–4–6 on remand.

{45} The trial court erred in submitting Plaintiff's contract claim to the jury because Plaintiff failed to prove the existence of an enforceable contract. Also, the trial court erred in awarding the mediator's fee as an item of cost. Finally, the trial court properly allowed the jury to consider damages for future pain and suffering.

{46} Plaintiff is awarded her costs on appeal. We reverse and remand for a new trial consistent with our opinion.

{47} **IT IS SO ORDERED.**

DONNELLY and ARMIJO, JJ., concur.