## Fowler v. Helck.

April 18, 1939.

362

TRABUE, DOOLAN, HELM & HELM for appellant.
BOOTH & CONNER for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming.

The appeal is from a judgment on a verdict in favor of the defendant, Edward J. Helck, in a suit by William B. Fowler, to recover damages for having been bitten by a dog alleged to be vicious and owned by the defendant. The grounds for reversal are: The verdict is flagrantly against the evidence; the rejection of competent and the admission of incompetent evidence.

Since the repeal of a statute of long standing, the common law in relation to a right of action and liability for an injury inflicted by a dog prevails in this State. Brown v. Weathers, 247 Ky. 306, 57 S. W. (2d) 4. Accordingly, the evidence was directed to the essential issues of ownership, the disposition of the dog, notice of the defendant, as owner, of the dog's vicious character,

and the extent of damage.   Murray v. Young, 12 Bush 337, 75 Ky. 337.

For several years before his removal in the fall of 1935 to an apartment in the Brown Hotel, in Louisville, the defendant had lived in what is called a log cabin belonging to Mrs. Leon Lewis on Kenwood Hill, in the southern part of Jefferson County.   There he had raised a Doberman Pinscher dog named "Big Boy."   When he moved Mr. Helck asked Mrs. Lewis to find a home for his dog or to give him away, and she undertook that commitment.   Mrs. Anna Purdy moved on the place as a caretaker and the dog was put in her custody.   There was a good deal of evidence as to whether Mrs. Lewis, in behalf of the defendant, gave her the dog or rather whether Mrs. Purdy accepted title to him.   This question was sharply disputed.   Mrs. Purdy felt unable to pay for the dog's food, and it is admitted that at her request Helck paid for it, at a cost of about $4 a month, up until August, 1936, after the dog bit young Fowler. Mr. Helck's explanation is that he bore this expense because he was devoted to the dog, he realized he had a good home, and that those who had him could not afford to buy his food.   While perhaps the evidence is stronger toward showing the defendant had title to the dog, yet there was evidence tending to show that Mrs. Purdy owned him at the time of the accident.   Whether the verdict for the defendant was returned on this issue of ownership is not disclosed, but if it was there was evidence to support such a finding.

We consider the evidence as to the dog's disposition or character and the circumstances of the accident.

Kenwood Hill is the highest point in Jefferson County, and, in addition to having a number of summer homes and lodges thereon, is a very popular place for picnics, Boy Scout camps, and other recreation.   It is an attractive playground.   "Billy" Fowler, the plaintiff, was about 11 years old in the summer of 1936, and lived on the Hill with his mother, Mrs. Susan C. Fowler. One day in July, the Hill caught fire.   Billy testified that the firemen had not been able to locate its source, so he and other boys ran up the Hill and then down again to tell the firemen where it was.   When he got about half way down, at the Lewis yard, where John Kilgarriff then lived, and where there was a crowd of people gathered, "Big Boy" came out barking.   "Billy" tried not to show his fright and started to pat the dog

when he jumped on him and knocked him down. "Billy" says: "When I put my leg up he bit me right on the knee." The child received a severe bite on his kneecap, which required his leg to be kept in a cast for three weeks; but he fully recovered. The boy had known the dog and had seen him around in the woods during the several years Mr. Helck lived there. But he says he was always scared of him, though when the boys would holler at the dog he would run home.

The only other act proved as showing a vicious propensity was that about two years before this the dog had bitten another boy who was camping up the Hill and who had gone down to the Helck place for some water. This incident was made known to the defendant, but it was minimized by the boy and his parents. The defendant established by the preponderance of evidence that "Big Boy" was a docile dog, free from malicious habits, or viciousness of disposition, a favorite not only of the children in the neighborhood, but of all visitors and strangers. On this aspect of the case, like the other, the evidence was such as not only to authorize the submission of the issue of viciousness or docility but ample to support the verdict.

The rejected evidence which the appellant maintains should have been admitted was that the dog fought other dogs and, specifically, that he had severely injured a certain bird dog; also that he had a reputation for being vicious.

The first is quite a novel proposition. The instant question was the dog's propensity to attack a human. The canine code duello is something else. That involves the question of what constitutes a just cause for battle in the dog world, or what justifies a resort to arms, or rather to teeth, for redress; what different degrees or kinds of insult, or what violations of the rules of the canine etiquette entitle one dog to insist upon prompt and appropriate satisfaction. It is supposed that the right of dogs to fight is one of the few privileges which they still retain in the domesticated state. As further stated by a learned Judge of the Supreme Court of New York, in Wiley v. Slater, 22 Barb. 506:

"It was one of their reserved rights, not surrendered when they entered into and became a part of the domestic institution, to settle and avenge, in their own way, all individual wrongs and insults,

without regard to what Blackstone **or any** other jurist might write, speak or think **of the** 'right of persons' or 'rights of things.'"

The poet believed it to be a divine **right of dogs to fight,** in writing:

> "Let dogs delight to bark and **bite,**
> For God hath made them so;
> Let bears and lions growl and fight,
> For 'tis their nature to."

It is this difference that supports the opinions that in an action for personal injury it is not sufficient to show that the owner of a dog had knowledge that it was accustomed to bite other animals. Twig v. Ryland, 62 Md. 380, 50 Am. Rep. 226; Keightlinger v. Egan, 65 Ill. 235; Norris v. Warner, 59 Ill. App. 300; Hensley v. Mc-Bride, 112 Cal. App. 50, 296 P. 316; 1 R. C. L. 1117; 2 Am. Jur. Animals, Section 48, 83; 3 C. J. S., Animals, 1273, 1281, Sections 174, 177. Conversely, knowledge that a dog is accustomed to attack man is not knowledge that it is likely to attack sheep. Hartley v. Harriman, 1 Barn. & Ald. 620. Therefore, the trial court committed no error in refusing to admit the testimony concerning the propensity of "Big Boy" to attack other dogs.

Referring to the second item of rejected evidence, the court sustained objections to questions asked the plaintiff and his mother as to what the dog's reputation was as to being vicious or docile. It was avowed the witness would testify he was reputed to be vicious. In Murray v. Young, supra, where the injury was to sheep inflicted by dogs, it is stated in the course of the opinion that the trial court did not err in admitting evidence that the dogs were reputed to be vicious and destructive. In Montgomery v. Glasscock, Ky., 121 S. W. 668, 669, where the injuries were the tramping down of a farmer's crop and the kicking of his mare by two of the defendant's horses, it was said: "Evidence that the horses causing the damage had a reputation for roguishness was properly excluded." The parties to this appeal rely respectively upon these opinions—the one that the rejection of the evidence was error and the other that it was not.

Again it may be noted that we have a case of a dog attacking a human. The horse case is distinguishable because, universally, dogs are regarded by the courts a class in themselves, unique from other domestic

animals, such as horses or cows, because of their liability to break through all discipline and act according to their old and original savage nature. 1 R. C. L. 1112. Evidence of the habits or a general trait of a dog along relevant lines is competent as tending to show a reputation for that particular vicious propensity and the owner's knowledge thereof. But evidence of a general reputation for viciousness is not admissible. 2 Am. Jur., Animals, Section 82; 3 C. J. S., Animals, 1276, Section 175. Where evidence as to reputation has been held admissible, it was confined to the particular propensity involved in the case, such as to annoy or kill sheep, or to attack passing teams of horses. 1 R. C. L. 1132; Warrick v. Farley, 95 Neb. 565, 145 N. W. 1020, 51 L. R. A., N. S., 45. It was such in Murray v. Young, supra.

The well-known astute lawyer of fiction, Mr. Tutt, once won a lawsuit for the defendant in a case of this kind by maintaining that, "Every dog is entitled to one bite." He found authority for his argument in the old English case of Smith v. Belah, Hilary Term, 20 Geo. 2, 2 Strange 1265, 93 Eng. Reps. 1171, from which we quote:

"The Chief Justice (Lord Alverstone) ruled that if a dog has once bit a man and the owner having notice thereof keeps the dog and lets him go about or lie at his door, an action will lie against him at the suit of a person who is bit though it happened by such person's treading on the dog's toes, for it was owing to his not hanging the dog on the first notice. And the safety of the King's subjects ought not afterwards to be endangered. The scienter is the gist of the action."

He might also have read from Chief Justice Lindsay's opinion in Murray v. Young, supra:

"It is essential first to show that the animal had, by some *one* or more specific acts, indulged its vicious and destructive disposition, in order, by conveying notice thereof to the owner, to prove that he had knowledge of its mischievous propensity." (Added italics.)

Had Mr. Tutt's adversary been as diligent, however, he might have discovered that other courts hold that in order to establish viciousness or ferociousness to a degree that endangers the safety of persons, it is not necessary to show the dog had once before bitten

an individual if there are other clear attendant circumstances showing such propensity and a knowledge thereof by the owner. Rider v. White, 65 N. Y. 54, 22 Am. Rep. 600; McCaskill v. Elliot, 5 Strob., S. C., 196, 53 Am. Dec. 706; Note; 24 L. R. A., N. S., 460; 1 R. C. L. 1117; 2 Am. Jur. Animals, Section 48; 3 C. J. S., Animals, 1281, Section 176.

In this record the character and nature of the dog was inquired into quite thoroughly by the examination and cross-examination of many witnesses. The questions to which objections were sustained were not confined to the dog's reputation in respect to his attitude toward children or other persons, but was all embracing. We think the ruling of the court was correct.

Because of the insistence that the dog had been given away by Mrs. Lewis as Helck's agent, on the one side, and the insistence that the gift had not been accepted by Mrs. Purdy, on the other, and that the title was, therefore, somewhat suspended in mid-air, the testimony was quite unrestricted as to what each of these ladies had said, one to the other, and to other persons. The whole question was thoroughly explored and all facts disclosed. During the course of the examination, now and then objections were entered by the plaintiff, some of which were overruled. Most of the testimony now complained of was hearsay and outside the claimed exceptions to the hearsay rule in relation to proving the character of possession of personal property by statements of ownership. But we are admonished not only by the Civil Code of Practice, Sections 134, 338, 756, but by the general rules of appellate action to look to the effect of an error rather than to the fact that it was committed; and, unless it is reasonably certain that the substantial rights of the appellant were prejudiced, not to reverse the judgment. These errors must be so regarded.

Wherefore, the judgment is affirmed.