ERNEST COY HILL BY HIS NEXT FRIEND, COY HILL, v. L. O. MOSELEY
AND WIFE, SALLIE MOSELEY.

(Filed 10 December, 1941.)

1. Animals § 3—

One who keeps on his premises a domestic animal of known vicious
propensity is responsible in law to another whom he has wrongfully
exposed to danger of attack by such animal, and who has been injured
thereby.

2. Same—

The evidence, considered in the light most favorable to plaintiff, tended
to show that defendants kept a bull which they had reason to know was
vicious, that plaintiff was employed by defendants and was told by his
superior to drive the cows out of the lot to the pasture, and that when
plaintiff entered the lot he was attacked and seriously injured by the bull.
Held: The evidence was sufficient to be submitted to the jury on the
question of liability.

3. Same—

While evidence of an animal's reputation is incompetent to show,
directly, vicious propensity of the animal, such evidence is competent to
show knowledge on the part of the owner that the animal was vicious
and to corroborate the testimony of witnesses who have sworn to the fact
of viciousness.

4. Same—

In order to establish the vicious character of a domestic animal it is
not required that the animal should have previously inflicted actual injury
upon a person, but it is sufficient if it is made to appear that the animal
had theretofore attacked persons and that injury was prevented only by
prompt resort to counter measures.

5. Same—

The vicious propensity of an animal must be unequivocal, but it is not
required that the animal be malicious, since the propensity is vicious if
it tends to harm, whether manifested in play or in anger.

STACY, C. J., concurring in result.
WINBORNE, J., joins in concurring opinion.

APPEAL by defendants from Thompson, J., at May Term, 1941, of
LENOIR.

This action was brought by the plaintiff to recover damages for an
injury sustained through the attack of a vicious bull harbored or kept by
defendants on the premises where plaintiff was required to work. The
alleged negligence consisted in exposing plaintiff to attack by the animal
whose vicious propensities were known, or should have been known, to
defendants but of which plaintiff was unaware.

The evidence, taken in the light most favorable to plaintiff, tends to show that defendants owned a farm as tenants by entirety, and thereon conducted farming operations and a dairy and owned a herd of cattle, among them the Guernsey bull whose conduct gave rise to this action.

Plaintiff, a lad of thirteen years, living on the Moseley farm, had been employed by Moseley previously, and on the day before had been assisting in baling oats. Moseley told him to return next day, which he did, and was then told by Moseley to help the milkman, Lee Garris, whereupon plaintiff reported to Garris and asked him "what was his job." Garris told him the first thing was to put the cows out of the lot into the pasture, and to drive them out of the lot. The lot contained the bull and forty or fifty cows and opened through a gate into a lane which led to the pasture a quarter of a mile away. The plaintiff entered the lot to open the gate and drive the herd through, as he was told to do, with the following result: "I heard something behind me and looked and he was about as close to me as from me to where the Judge is sitting, about 1½ yards; he was coming about as fast as he could, I guess, charging."

"I started to run as quick as I could but he caught me and struck me in the lower part of my back. He picked me up and sorter tossed me in the air and then he caught me and shook me. I was all tangled up on his head and he shook me off and then he began sorter rolling me toward the fence on the ground."

"It felt like he knocked me a right good little ways, but I don't reckon it was over two or three yards. When he hit me first he caught me before I hit the ground and I fell on his head. He pushed and rolled me on the ground about 25 or 30 yards; he rolled me about to the fence and I began screaming for help as soon as I saw him coming and Mr. Glover and Lee Garris came running and I was about to the fence when he stopped and backed off; I tried to run and fell down and began hobbling to the fence and when I got the gate Mr. Glover lifted me over and took me to the car. Mr. Glover and Mr. Garris did not go in the lot while he was attacking me."

Testimony as to the vicious disposition of the bull came principally from those who had been tenants on the farm and who had observed his habits. One who had previously handled the bull for defendants testified that he was dangerous, that he had had to jump the fence to get out of the way when the bull tried to attack him, that he had been compelled to use a pitchfork on him to make him move off, and that Mr. Moseley saw how he had to handle him. Mrs. Moseley told him to kill the bull rather than let the animal hurt him.

There was further testimony from former tenants on the farm that the bull was "mean and bad" both by reputation and in fact, and that

"he would fight you"; that on one occasion a bulldog had to be put after him to protect a man plowing in the field; that one tenant deemed it necessary to stand guard while his wife did the family washing; that the bull had attacked a tenant house and torn away the steps, "hooked the garden posts off and hooked the chimney, and you could feel the jar of it in the sitting room and then he went around to the front room and started to go in there and I went around to the end room and Mrs. Wells told me to shoot him and I shot him." The load was No. 6 shot and did no serious damage.

Witnesses testified that they had told Mr. and Mrs. Moseley of the dangerous character of the animal, and asked that he be kept up.

There was evidence of the nature and extent of plaintiff's injuries, medical and surgical experts pronouncing it permanent.

The defendants, in apt time, made motions for judgment as of nonsuit, for the denial of which they excepted. Issues having been answered in favor of plaintiff, judgment was rendered thereon, and defendants excepted and appealed, assigning errors.

*J. A. Jones for plaintiff, appellee.*
*Sutton & Greene for defendants, appellants.*

SEAWELL, J. One who keeps on his premises a domestic animal of known vicious propensity is responsible in law to another whom he has wrongfully exposed to danger of attack by such animal, and who has been injured thereby. *Harris v. Fisher,* 115 N. C., 318, 20 S. E., 461; Harper, The Law of Torts (1933), sec. 175; 2 Cooley, The Law of Torts (4th Ed., 1932), sec. 267; 2 Am. Jur., sec. 63.

Under most authorities, injuries to persons by domestic animals whose vicious propensities are known to the keeper are classified as strict torts without reference to the principles governing negligence cases. Harper, Torts, sec. 171, p. 358; 1 Hale's P. C., 439, Part I, c. 33. "If notice of viciousness is present the owner of animals is liable irrespective of negligence or care on his part in keeping the animal . . ." Harper, Torts, sec. 171, p. 359. Strict liability obtains under this doctrine although the invasion of interest is unintended and nonnegligent. But we do not wish to become involved in a doctrinal discussion of distinctions which may lose their aptness according to the circumstances of the particular case when not involved on the record before us. Hence, we need not now discuss or decide the extent to which this doctrine is applied in this State. See *Banks v. Maxwell,* 205 N. C., 233, 171 S. E., 70; and *Rector v. Coal Co.,* 192 N. C., 804, 136 S. E., 113. In the instant case a distinction may be drawn from the fact that the animal

was under proper confinement and plaintiff was sent into the enclosure and exposed to the danger by defendants' servant in charge.

The great and affectionately remembered *Brogden,* in his classic opinion in *Banks v. Maxwell, supra,* lays down the requisites establishing liability as follows: ". . . a person injured by a domestic animal, in order to recover damages, must show two essential facts: (1) 'The animal inflicting the injury must be dangerous, vicious, mischievous or ferocious, or one termed in law as possessing a vicious propensity.' (2) 'The owner must have actual or constructive knowledge of the vicious propensity, character and habits of the animal.' " Applicable to the case at bar, we may add that the injury must have been brought about by the breach of some duty owed the plaintiff by the defendant. *Lander v. Shannon, et ux.,* 148 Wash., 93, 268 Pac., 145.

In *Judge Brogden's* opinion our attention is called to the fact that in cases like this the conditions of liability remain substantially as they were under the Mosaic law; it must be made known to the owner that the bull was "wont to push with his horn in time past." We may take it that the bull, after these trivial four thousand years, is much the same. But the product of artificial bodies like courts is not stabilized by ancestral genes, and the law has undergone some refinements which the able argument of counsel for defense compel us to notice. They relate to the development of plaintiff's case in the lower court.

Defendants have excepted to the admission of evidence relating to the animal's reputation. It is true that such evidence is generally held incompetent to show, directly, the vicious propensity. *Fowler v. Helck,* 278 Ky., 361, 128 S. W. (2d), 564; 3 C. J. S., Animals, sec. 175, p. 1276; 2 Am. Jur., Animals, sec. 82. It is nevertheless competent and admissible in two aspects: to show *scienter* or knowledge thereof on the part of the owner or keeper; and to corroborate the testimony of those who have sworn to the fact of viciousness. *McCullar v. Williams,* 217 Ala., 278, 116 So., 137; *Davis v. Mene,* 52 Cal. App., 368, 198 Pac., 840; 2 Wigmore, Evidence (3d Ed., 1940), sec. 251, and see also 5 Wigmore, *op. cit.,* sec. 1621, and cases cited; 3 C. J. S., Animals, sec. 175, p. 1277.

Standing on *Banks v. Maxwell, supra,* and the interpretation of bovine conduct there presented, the defendants point out that there is no evidence the Moseley bull ever injured anyone by a "push with his horn" or otherwise. This would seem to be a valid argument under early cases, in which that doctrine is expressed in the statement "that every dog is entitled to one bite" or "one worry." Harper, Torts, sec. 172, p. 361. But the doctrine no longer obtains; *Fowler v. Helck, supra;* Restatement, Torts (1938), sec. 509, comment g.—certainly not in this State. *Banks v. Maxwell, supra; Cockerham v. Nixon,* 33 N. C., 269. Under the modern view trial courts undertake to judge of the vicious

propensities of animals by their behavior, although it may fall short of actual injury. 2 Cooley, Torts (4th Ed., 1932), sec. 266, p. 54, and cases cited. Under that rule we can scarcely put it to the credit of the Moseley bull that prompt coördination of presence of mind and absence of body sometimes saved his keeper from disaster, or that, on separate occasions, the timely intervention of a bulldog, pitchfork, and shotgun saved his record from graver demerit. Those who knew him best feared him most. Where he held court, his human acquaintances made no plea to the jurisdiction, but promptly sought a change of venue.

The evidence of vicious propensity must be unequivocal. But we are not required to explore the psychology of the bull—if he has any—to determine whether his intentions are amiable or malicious. The propensity is vicious if it tends to harm, whether manifested in play or in anger, or in some outbreak of untrained nature which, from want of better understanding, must remain unclassified. 2 Am. Jur., Animals, sec. 48, p. 730. Counsel for plaintiff insists the evidence tends to show that the Moseley bull, on occasion, went somewhat beyond the legitimate expression of buoyancy accorded to his kind as normal and innocent in the former opinion of the Court. With this we are inclined to agree.

Careful examination of the evidence in detail seems to indicate that all the essentials to establish liability on the part of the defendants are present. The weight to be given the evidence was a matter for the jury.

We find

No error.

STACY, C. J., concurring in result: The jury has found upon competent evidence and under a charge free from reversible error, notwithstanding some inexactness, that the plaintiff was injured by the negligence of the defendants as alleged in the complaint and that he himself was not contributorily negligent. This is as far as we are required to go in upholding the judgment on the present record, and in my opinion, it is as far as we ought to go. Such was the theory of the trial, and it accords with our previous decisions on the subject. *Banks v. Maxwell*, 205 N. C., 233, 171 S. E., 70; *Rector v. Coal Co.*, 192 N. C., 804, 136 S. E., 113; *Hallyburton v. Fair Assn.*, 119 N. C., 526, 26 S. E., 114. There is a difference between keeping domestic animals and wild beasts, or beasts which are naturally vicious. *S. v. Smith*, 156 N. C., 628, 72 S. E., 321; *Buckle v. Holmes*, 2 K. B., 125, 54 A. L. R., 89; 2 Am. Jur., 724, *et seq.*

WINBORNE, J., joins in this opinion.