GEORGE R. HUNT v. CHARLES J. HUNT AND AMELIA P. HUNT

No. 8610SC892

(Filed 7 July 1987)

1. **Animals § 2.1— vicious propensities—notice to family member as notice to owner**

   Notice of an animal's vicious propensities to a family member of the animal's keeper or owner is usually notice to the owner or keeper.

2. **Animals §§ 2.1, 3— permitting dog to roam at large—vicious propensities—punitive damages as jury issue**

   Permitting a dog which is known to have twice attempted without provocation to bite a human being to run loose in an area inhabited or occupied by other people is evidence of a reckless or wanton indifference to or disregard for the safety of others sufficient to support an award of punitive damages, and the trial court therefore erred in entering partial summary judgment for defendant eliminating the punitive damages issue from the case.

   Judge JOHNSON concurring in the result.

   Judge BECTON dissenting.

APPEAL by plaintiff from *Farmer, Judge.* Order entered 12 June 1986 in Superior Court, WAKE County. Heard in the Court of Appeals 14 January 1987.

Defendants, who lived adjacent to a trailer park where plaintiff lived, had had a German Shepherd dog named Rocky since 1979. According to plaintiff on 8 March 1983, while he was walking in his own yard defendants' dog without provocation ran onto plaintiff's property, seized his hand and bit it. Plaintiff thereafter sued defendants for compensatory and punitive damages alleging, in gist, that though the dog had dangerous propensities, which defendants knew about, they recklessly disregarded his rights and safety by permitting the dog to run loose before it bit him. After discovery was completed, defendants moved under Rule 56, N.C. Rules of Civil Procedure for an order of partial summary judgment eliminating the punitive damages issue from the case, and

following a hearing the motion was granted. Plaintiff's appeal is from that order and the only parts of the record that bear directly upon its validity are statements by the defendants in their depositions and answers to interrogatories to the effect that at the time of the biting the dog was roaming at large with their permission, the dog was not vicious to their knowledge, and they had received no complaints about it attacking anybody before it bit plaintiff; and two affidavits offered by plaintiff which indicate that the dog was vicious and defendants knew it. The affidavit of Marsha G. Wells, a schoolteacher who had resided near defendants for several years, stated:

> 3. In the Spring of 1982 I observed Mr. Hunt's german shepherd dog, "Rocky", chasing my eight-year-old daughter and my seven-year-old niece across a field near our home. The dog was barking and snapping at them and they were extremely frightened.

> 4. At this time Mr. Hunt was outside his home and observed the dog chasing the children. He called the dog off and the children were able to get inside the trailer safely.

> 5. I later called Charles Hunt and spoke personally to him about this incident, and asked him to keep his dog locked up. I told him that my children were afraid to play in their yard, and told him that Rocky seemed to spend more time in the trailer park area than he did in his own yard. Mr. Hunt was agreeable, and stated that he would keep the dog out of the trailer park.

> 6. After this incident Rocky continued to be seen in the trailer park, and for the safety of my children I simply kept them inside most of the time. I also know that my husband, Clarence Wells, called Charles Hunt on more than one occasion to complain about the dog.

The affidavit of Kip L. Boatwright, an industrial worker who used to live in the trailer park near the defendants, stated:

> 3. . . . On one occasion, prior to March 8, 1983, their german shepard (sic) dog attacked me while I was outside my trailer. This attack was unprovoked by me. I had a 2 x 4 in

front of me when the dog attacked, and his teeth bit into the 2 x 4. I was literally put in fear of my life, and ran to safety inside my trailer.

4. One of Charles Hunt's family members came down and got the dog, and I told him what had happened and told him to keep the dog locked up—that it was dangerous—and that I would shoot it if it came on my property again. He didn't seem to care one bit, and the dog continued to roam the area after this incident.

*Jernigan & Maxfield, by John A. Maxfield and Leonard T. Jernigan, Jr., for plaintiff appellant.*

*Young, Moore, Henderson & Alvis, by David P. Sousa and Ralph W. Meekins, for defendant appellees.*

PHILLIPS, Judge.

[1] The foregoing materials when viewed in the light most favorable to the non-movant plaintiff, as our law requires, *Durham v. Vine*, 40 N.C. App. 564, 253 S.E. 2d 316 (1979), tend to show that defendants' dog was running loose with their consent when it bit plaintiff and that they had knowledge that the dog had tried to bite other persons on two prior occasions. Defendants, after arguing in their brief that the incident described in Mrs. Wells' affidavit involved only a harmless manifestation of spirit by the dog, conceded that the dog's conduct, as reported, could be "construed by a jury as amounting to vicious propensities." That concession was in order and we agree with it, since Mrs. Wells purportedly saw the events recounted, complained directly to the defendant Charles Hunt about them, and the word "snapping" when used in describing a dog's approach to a person is usually understood to mean that the dog was snapping its teeth in an effort to bite that person. But as to Boatwright's affidavit, which describes an even stronger manifestation of vicious propensities, defendants argue that it is insufficient to establish their knowledge of that incident because the affidavit does not state that Boatwright told one of the defendants about it. This argument is rejected. The affidavit states that Boatwright told a member of defendants' family about the attack and notice of an animal's vicious propensities to a family member of the animal's keeper or owner is usually notice to the owner or keeper. 3A

C.J.S. *Animals* Sec. 181(b), p. 676 (1973). This rule, applicable in all cases involving domestic animals, is particularly appropriate in cases involving dogs that are family pets; for such dogs are usually looked after by the entire family, at least to some extent, and what one family member knows about the exploits of the family dog is usually known by the other family members. Furthermore, notice to one joint keeper of a domestic animal is also notice to the other keeper, 3A C.J.S., *supra*, and the affidavit indicates that the family member that the affiant notified was one of the dog's joint keepers since he "came down and got the dog." Contrary to defendants' argument, that plaintiff neither alleged nor showed by other evidence that this family member who came for the dog was one of the dog's keepers, is immaterial at this juncture, because on a hearing for summary judgment the non-movant is not required to refute what the movant has not established, *Moore v. Fieldcrest Mills, Inc.*, 296 N.C. 467, 251 S.E. 2d 419 (1979), and defendants presented nothing to indicate that they were the dog's sole keepers. Nor is it fatal to the affidavit's validity that Boatwright did not identify the family member that he told about the dog attacking him. The hearing was not a trial governed by strict rules of evidence; it was a hearing to determine only whether plaintiff is incapable of producing valid evidence on the issue raised, and the affidavit indicates that plaintiff can present testimony that bears directly on the issue in dispute. Since Boatwright claims that he had been defendants' near neighbor and discussed the dog's attack with a family member, it is proper to assume that he knows that family member and can identify him at trial. For in a hearing for summary judgment the non-movant's materials are to be indulgently regarded, *Van Poole v. Messer*, 19 N.C. App. 70, 198 S.E. 2d 106 (1973), and the drastic remedy of summary judgment is not to be imposed because of overdrawn questions about the admissibility of evidence that may not even arise at trial, but only when it is clearly shown that the non-movant cannot produce the necessary evidence at trial, *Dendy v. Watkins*, 288 N.C. 447, 219 S.E. 2d 214 (1975), and no such showing has been made here. This is not to say, of course, that the admissibility of the evidence referred to herein has been established, but only that it has not been shown that any of the purported evidence is necessarily inadmissible.

Thus, the only question presented by this appeal is whether the evidence that defendants' dog was running loose with their

consent when it bit plaintiff and they had knowledge that on two prior occasions the dog had tried to bite somebody is sufficient to support a verdict against them for punitive damages. In determining the question we are guided by the following established principles of law: Punitive damages are not recoverable as a matter of right in any case, but only in the discretion of the jury when the evidence warrants. *Hinson v. Dawson*, 244 N.C. 23, 92 S.E. 2d 393 (1956). In personal injury cases sounding in negligence punitive damages cannot be awarded where the defendant's wrong amounted to no more than ordinary negligence; they can only be awarded where there is a higher level of misconduct, such as wilfulness, wantonness or recklessness that indicates at least an indifference to or a disregard for the rights and safety of others. *Henry v. Deen*, 310 N.C. 75, 310 S.E. 2d 326 (1984); *Hinson v. Dawson, supra; Huff v. Chrismon*, 68 N.C. App. 525, 315 S.E. 2d 711, *disc. rev. denied*, 311 N.C. 756, 321 S.E. 2d 134 (1984); *Robinson v. Duszynski*, 36 N.C. App. 103, 243 S.E. 2d 148 (1978); W. Prosser and W. Keeton, The Law of Torts Sec. 2, p. 10 (5th ed. 1984). To establish the liability of the owner or keeper of a domestic animal for injury done to a human being there must be evidence that the animal had previously indicated its dangerous propensities and the owner or keeper had knowledge of it. But notwithstanding the old adage about every dog "being entitled to one bite," a dog bite victim does not have to show that the dog bit someone else earlier; he only has to show that the dog had demonstrated its vicious inclinations by trying to bite someone and that the owner or keeper had knowledge of it. *Hill v. Moseley*, 220 N.C. 485, 17 S.E. 2d 676 (1941). "Knowledge of one attack by a dog is generally held sufficient to charge the owner with all its subsequent acts." 4 Am. Jur. 2d *Animals* Sec. 95, p. 343 (1964). Finally, the wrong or fault in such cases is the *keeping* of a dangerous animal and liability does not depend upon proof that the owner was negligent in permitting it to run loose or in letting it escape, *Hill v. Moseley, supra*, though permitting a dangerous animal to run loose is certainly a circumstance to be considered in determining whether the tort was aggravated.

[2] Applying the foregoing principles of law to the record presented, we conclude that the trial court erred in removing the punitive damages issue from the case. If an owner's knowledge that his dog on one prior occasion tried to bite somebody is

Hunt v. Hunt

enough to establish his liability for a later biting, as it certainly is, it necessarily follows that much more than ordinary negligence is indicated when an owner permits a dog to run loose that to his knowledge has tried to bite a human being on two prior occasions; indeed, the record before us contains no suggestion that the defendants permitted the dog to run at large through mere oversight or inadvertence. Under the circumstances therefore it seems plain to us, and we so hold, that permitting a dog that is known to have twice attempted without provocation to bite a human being to run loose in an area habitated or occupied by other people is evidence of a reckless or wanton indifference to or disregard for the safety of others, sufficient to support an award of punitive damages. Thus, we vacate the order appealed from. Our only alternatives to so doing, it seems to us, are to hold either that punitive damages cannot ever be awarded in a dog bite case, or that before damages can be awarded in such a case there must be evidence that to the owner's knowledge the dog made three or more attempts to harm human beings before it succeeded. We decline to make either holding. Needless to say, our decision is necessarily based upon plaintiff's version of the facts, rather than that of the defendants, and which is the true version is not for us, but a jury, to say.

Vacated and remanded.

Judge JOHNSON concurs in the result.

Judge BECTON dissents.

Judge JOHNSON concurring in the result.

I concur in the result. If this case involved unsuccessful efforts by defendant to control his dog—for example, if defendant's dog had dug under a fence or broken loose from a chain—I would not hesitate to affirm the trial court. However, on the facts of this case, the jury should be allowed to determine whether the defendant's actions in allowing his dog to roam loose constitutes the kind of egregious behavior that would warrant an award of punitive damages. Whether defendant was twice or thrice warned is but a factor the jury should consider.

Judge BECTON dissenting.

This Court will one day be asked to decide a "worst-scenario" dog-bite case with particularly egregious facts impelling the submission of a punitive damage issue to the jury. That case is not before us today, and I therefore dissent. First, in my view, "the wrong or fault . . . is [not] the *keeping* of a dangerous animal," *ante* p. 327; rather, it is in allowing the dog to escape and bite someone. Second, considering the facts of this case, I believe the trial court properly granted summary judgment on the punitive damages issue since the forecast of evidence only showed that defendant kept a dog whose vicious propensities were known to him. That forecast of evidence indicates negligence, nothing more; it constitutes the elements of the tort of keeping a vicious dog. Punitive damages are not awarded for mere ordinary negligence.