ANDREW J. WILSON AND WIFE, MARGARET WILSON, PLAINTIFFS v. CARL C. PEARCE AND WIFE, WANDA R. PEARCE, DEFENDANTS

No. 9114SC79

(Filed 21 January 1992)

1. **Adverse Possession § 45 (NCI4th)— next-door neighbors— adverse possession of plaintiff's fenced area—submission of issue to jury proper**

   The trial court did not err in submitting the issue of adverse possession to the jury where both parties raised the issue in their pleadings and where the evidence tended to show that plaintiffs built their fence in 1957 on the property that defendants later purchased, and, throughout the more than 30 years prior to this action, plaintiffs' possession of the property in dispute was actual, open, hostile, exclusive and continuous.

   **Am Jur 2d, Adverse Possession § 321.**

2. **Malicious Prosecution § 13 (NCI3d)— arrest for trespass in own yard—sufficiency of evidence of malicious prosecution**

   The trial court did not err in submitting the issue of malicious prosecution to the jury where the evidence tended to show that defendant initiated a proceeding for criminal trespass against plaintiff; this charge was dismissed by the trial court; a reasonable person under the same circumstances as defendant would have known that the criminal trespass charge had no reasonable foundation in that plaintiff, at the time of his arrest, was mowing the grass on his side of his fence but on the property defendant claimed, plaintiff's fence had been on the property for more than 30 years at the time defendant took out the warrant, the fence and wall had been erected for at least the eight years defendant had lived next door to plaintiff, defendant never in those eight years sought a criminal trespass warrant against plaintiff, and defendant had never been on the property he claimed as his own; and defendant wife testified that defendants' intent in bringing the trespass charge against plaintiff was to assert their ownership claim to the property, not because they thought plaintiff was actually trespassing.

   **Am Jur 2d, Malicious Prosecution §§ 184-186.**

**3. Trespass § 2 (NCI3d) — next-door neighbors — threats — intentional infliction of emotional distress — sufficiency of evidence**

Evidence was sufficient to be submitted to the jury on the issue of intentional infliction of emotional distress by defendant husband upon plaintiff husband where it tended to show that defendant raised his fist, made obscene gestures, cursed and threatened plaintiffs; defendant piled firewood against plaintiffs' fence in a pile taller than the fence which caused the fence to bulge and which attracted rats, even though defendants had no fireplace; defendants complained to the Durham City Housing Inspector about the condition of plaintiffs' yard and to the Durham Police Department about a "juvenile disturbance" at plaintiffs' home, both of which complaints were found to be groundless upon investigation; defendants threatened the grown children of plaintiffs and another neighbor who was helping plaintiff mow his lawn; and defendant was served a temporary restraining order to stop his alleged harassment of plaintiffs, but was found in contempt of the order.

**Am Jur 2d, Fright, Shock, and Mental Disturbance §§ 4-7, 17, 36, 38, 40-42, 51, 55.**

**Modern status of intentional infliction of mental distress as independent tort; "outrage." 38 ALR4th 998.**

**4. Trespass § 2 (NCI3d) — intentional infliction of emotional distress — wife's claim dismissed — error**

The trial court erred in dismissing plaintiff wife's claim for intentional infliction of emotional distress by defendant husband where the evidence tended to show that defendant threatened to kill plaintiff or her husband, threatened to have one of plaintiff's children arrested, and threatened plaintiff's husband in her presence, and though defendant was aware that plaintiff took substantial medication, defendant directed threats toward plaintiff, a senior citizen, both inside and outside her home.

**Am Jur 2d, Fright, Shock and Mental Disturbance §§ 4-7, 17, 27, 28, 40, 42, 51.**

**Modern status of intentional infliction of mental distress as independent tort; "outrage." 38 ALR4th 998.**

WILSON v. PEARCE

[105 N.C. App. 107 (1992)]

5. **Malicious Prosecution § 13 (NCI3d); Trespass § 2 (NCI3d) — intentional infliction of emotional distress — malicious prosecution — sufficiency of evidence**

In an action against defendant wife for malicious prosecution and intentional infliction of emotional distress, evidence was sufficient to be submitted to the jury where it tended to show that almost any time defendant husband verbally abused or threatened plaintiffs, defendant wife was either present or had told her husband that plaintiffs were outside; in this way she assisted her husband on several occasions to continue his direct threats and abuse against plaintiffs; on one occasion she brought her husband what appeared to the plaintiffs to be a gun so that defendant husband could use it to threaten plaintiff husband; defendant wife also drove surveyor type stakes into the ground on plaintiffs' property to assert her claim for the land enclosed by plaintiffs' fence; defendant testified that she and her husband "worked together" to have one of plaintiff's children arrested for trespass; and she conspired with her husband to have plaintiff husband arrested for criminal trespass.

**Am Jur 2d, Fright, Shock and Mental Disturbance §§ 4-7, 17, 36, 38, 47, 51.**

**Modern status of intentional infliction of mental distress as independent tort; "outrage." 38 ALR4th 998.**

6. **Trespass § 10 (NCI3d) — intentional infliction of emotional distress — punitive damages — failure to submit to jury — error**

In an action to recover for intentional infliction of emotional distress arising out of next-door neighbors' disagreement over the ownership of a strip of land, the trial court erred in refusing to submit the issue of punitive damages to the jury where there was sufficient evidence showing extreme and outrageous conduct by defendants toward plaintiffs as well as insult, indignity, malice, oppression, or bad motive.

**Am Jur 2d, Damages §§ 747, 762-770; Malicious Prosecution § 187.**

APPEAL by defendants and cross-appeal by plaintiffs from judgment entered 3 August 1990 by *Judge James A. Beaty* in DURHAM

County Superior Court. Heard in the Court of Appeals 5 November 1991.

In July and October 1989, plaintiffs filed a complaint and amended complaint against defendants alleging intentional infliction of emotional distress by both defendants against both plaintiffs and for malicious prosecution by both defendants against plaintiff Andrew J. Wilson. Plaintiffs sought compensatory and punitive damages. The issue of adverse possession was raised by defendants' counterclaims and plaintiffs' replies.

This case was tried before a jury beginning 30 July 1990. At the close of plaintiffs' evidence, the trial court granted defendant Wanda Pearce's motion for directed verdict and dismissed all claims against her. The trial court also granted directed verdict against plaintiff Margaret Wilson for her claim of intentional infliction of emotional distress against both defendants. The trial court also refused plaintiffs' request to submit the punitive damages issue to the jury.

The jury subsequently returned its verdict in favor of plaintiffs on the adverse possession issue, and awarded $65,000.00 to plaintiff Andrew J. Wilson for intentional infliction of emotional distress and $25,000.00 for malicious prosecution. On 3 August 1990, the trial court entered its judgment accordingly.

From the judgment of 3 August 1990, defendant Carl C. Pearce appeals and plaintiffs cross-appeal.

*Arthur Vann for defendant-appellant Carl C. Pearce and defendants cross-appellees Carl C. and Wanda R. Pearce.*

*King, Walker, Lambe & Crabtree, by Daniel Snipes Johnson, for plaintiff-appellees and plaintiffs cross-appellants.*

ORR, Judge.

Defendant argues three issues on appeal and plaintiffs argue three issues on cross-appeal. For the following reasons, we affirm the judgment in favor of plaintiffs on the issues of adverse possession and intentional infliction of emotional distress and malicious prosecution by defendant Carl C. Pearce against plaintiff Andrew J. Wilson. We reverse the judgment directing verdict and dismissing the claims of plaintiff Margaret Wilson for intentional infliction of emotional distress against both defendants and directing verdict

in defendant Wanda R. Pearce's favor on the issues of intentional infliction of emotional distress and malicious prosecution against plaintiff Andrew J. Wilson. Moreover, we hold that the issue of punitive damages should have been submitted to the jury.

This case arises from a property dispute. The evidence of record shows that plaintiffs moved into their home in 1955. Plaintiff Andrew Wilson (Mr. Wilson) was 73 years old at the time of trial and plaintiff Margaret Wilson (Mrs. Wilson) was 68. The Wilsons have three grown children, one of whom was still living at home during this dispute.

In 1957, plaintiffs built a fence enclosing their back yard. This fence encroached on the lot next door and crossed over another adjoining lot. This fence has stood continuously since 1957, and plaintiffs have maintained the property and improved the fence in the same location.

In 1980, defendants purchased the lot next door and in 1982, purchased the two lots adjoining plaintiffs' property. Plaintiffs' fence encroached upon a portion of the property purchased by defendants. The previous owner of the two lots defendants purchased in 1982 notified plaintiffs in January 1982 that he had sold those lots to defendants and requested that plaintiffs move their fence. Plaintiffs did not comply with this request.

In 1980, defendants allegedly began harassing plaintiffs over the location of the fence. Specific acts by defendants will be discussed below. Generally, defendants allegedly cursed and threatened plaintiffs, reported them to the City of Durham for untrue and alleged violations of city ordinances, threw items into plaintiffs' yard, made obscene gestures to plaintiffs and their children and generally disturbed their peace.

On 3 August 1989, the trial court issued a preliminary injunction against defendants enjoining defendants from engaging in such harassment toward plaintiffs. On 31 August 1989, defendants were found in contempt of court for violating the terms of the injunction, and defendant Carl Pearce (Mr. Pearce) was ordered to serve 48 hours in the Durham County Jail for willful contempt.

*Defendant's Appeal*

A.

[1]    Defendant first argues that the trial court erred in submitting the issue of adverse possession to the jury. We find no error.

It is well settled law that the trial court must submit to the jury the issues raised by the pleadings and evidence to fairly adjudicate the case, and that the form and number of the issues submitted is within the sound discretion of the trial court. *McNeill v. Durham County ABC Bd.*, 87 N.C. App. 50, 359 S.E.2d 500 (1987), *aff'd in part, rev'd in part on other grounds*, 322 N.C. 425, 368 S.E.2d 619, *reh'g denied*, 322 N.C. 838, 371 S.E.2d 278 (1988). This Court will not find that the trial court abused its discretion so long as the trial court submits the issues comprehensively to resolve all factual controversies.

In the present case, defendants raised the issue of ownership of the property in question in their initial answer filed 17 July 1989. In a counterclaim dated 26 January 1990 and amended counterclaim dated 17 July 1990, defendants raised the issue of plaintiffs' claim to the property. Moreover, plaintiffs specifically raised the issue of adverse possession of the property in an affirmative defense dated 30 July 1990.

Where there is evidence that a party has acquired title to property under 20 years' adverse possession, this issue should be submitted to the jury. *McClure v. Crow*, 196 N.C. 657, 146 S.E. 713 (1929). Here, the evidence indicates that plaintiffs built their fence in 1957 on the property that defendants later purchased. Throughout the more than 30 years prior to this action, plaintiffs' possession of the property in dispute has been actual, open, hostile, exclusive and continuous. *See Campbell v. Mayberry*, 12 N.C. App. 469, 183 S.E.2d 867, *cert. denied*, 279 N.C. 726, 184 S.E.2d 883 (1971). There is ample evidence of adverse possession in the case *sub judice* as well as in the issues raised by the pleadings. Therefore, we find no error on this issue.

B.

[2] Defendant next argues that the trial court erred in submitting the malicious prosecution issue to the jury. We disagree.

In March 1988, Mr. Wilson was arrested for criminal trespass. Mr. and Mrs. Pearce testified at trial in the present case that they took out the warrant against Mr. Wilson to establish their ownership of the property in question. At the time Mr. Wilson was arrested, he was mowing the grass on his side of the fence but on the property that defendants claimed.

Defendant argues that because a magistrate must find prob-able cause prior to issuing a warrant for criminal trespass, there was probable cause in this case; therefore, there can be no malicious prosecution. Using this faulty rationale, there could never be a cause of action for malicious prosecution so long as a warrant had been issued for the underlying crime because a magistrate must have probable cause to issue any warrant.

In *Flippo v. Hayes*, 98 N.C. App. 115, 389 S.E.2d 613, *aff'd*, 327 N.C. 490, 397 S.E.2d 512 (1990), this Court reviewed the law on malicious prosecution.

In proving a cause of action for malicious prosecution, the claimant must show that the defendant initiated the earlier proceeding maliciously and without probable cause and that the proceeding terminated in the claimant's favor. *Jones v. Gwynne*, 312 N.C. 393, 323 S.E.2d 9 (1984). Probable cause in malicious prosecution cases has been defined as "the existence of such facts and circumstances, known to him at the time, as would induce a reasonable man to commence a prosecution." *Pitts v. Village Inn Pizza, Inc.*, 296 N.C. 81, 87, 249 S.E.2d 375, 379 (1978) (quoting *Morgan v. Stewart*, 144 N.C. 424, 430, 57 S.E. 149, 151 (1907)). The burden of proving want of prob-able cause is on the party pursuing the malicious prosecution claim. *Gray v. Gray*, 30 N.C. App. 205, 207, 226 S.E.2d 417, 419 (1976). Such proof is not established by proof that the proceeding was instituted maliciously. *Id.* at 208, 226 S.E.2d at 419 (citing *Tucker v. Davis*, 77 N.C. 330 (1877)). If the facts are admitted or established, the question of probable cause is for the court, but when the facts are in dispute the question is one of fact for the jury. *Pitts*, 296 N.C. at 87, 249 S.E.2d at 379.

In this jurisdiction, want of probable cause may be found when an accuser swears out a criminal warrant but the conduct of the accused does not constitute a crime. *See Gray v. Bennett*, 250 N.C. 707, 110 S.E.2d 324 (1959); *Smith v. Deaver*, 49 N.C. 513 (1857).

*Id.* at 118-19, 389 S.E.2d at 615.

The test for determining probable cause in a malicious prosecu-tion action is "whether a man of ordinary prudence and intelligence under the circumstances would have known that the charge had

no reasonable foundation." *Hitchcock v. Cullerton*, 82 N.C. App. 296, 298, 346 S.E.2d 215, 217 (1986). The element of malice required in these actions may be inferred from a lack of probable cause in the underlying action. *Raymond U v. Duke University*, 91 N.C. App. 171, 178, 371 S.E.2d 701, 706, *disc. review denied*, 323 N.C. 629, 374 S.E.2d 590 (1988).

Applying these principles to the present case, there is no question that Mr. Pearce initiated the proceeding for criminal trespass against Mr. Wilson and that this charge was dismissed by the trial court. The only element remaining is whether Mr. Wilson has met his burden of establishing want of probable cause. We find that he has.

First, a reasonable person under the same circumstances as Mr. Pearce would have known that the criminal trespass charge had no reasonable foundation. Mr. Pearce knew that Mr. Wilson's fence had been on the property for more than 30 years at the time he took out the warrant. The fence and wall had been erected for at least the eight years Mr. Pearce had lived next door to Mr. Wilson, and Mr. Pearce never in those eight years sought a criminal trespass warrant against Mr. Wilson. Further, Mr. Pearce had never been on the property he claimed as his own.

Second, Mrs. Pearce testified that defendants' intent in bringing the trespass charge against Mr. Wilson was to assert their ownership claim to the property, not because they thought Mr. Wilson was actually trespassing. Finally, the jury found that Mr. Wilson had adverse possession of the property upon which he was allegedly trespassing on the date he was arrested for trespass. The jury also found enough evidence to support their verdict that Mr. Pearce instituted the action "with malice and without probable cause."

We therefore hold that the trial court did not abuse its discretion in submitting the issue of malicious prosecution to the jury.

### C.

[3] Defendant finally argues that the trial court erred in submitting to the jury the issue of intentional infliction of emotional distress by Mr. Pearce upon Mr. Wilson. Again, we find no error.

Counsel for Mr. Pearce cites the case of *Johnson v. Ruark Obstetrics and Gynecology Associates, P.A.*, 327 N.C. 283, 395 S.E.2d

85, *reh'g denied*, 327 N.C. 644, 399 S.E.2d 133 (1990), to support his argument that no emotional distress exists in the present case. *Johnson*, however, is a case dealing exclusively with *negligent* infliction of emotional distress, not *intentional* infliction of emotional distress as the case before us. Therefore, *Johnson* is not on point.

To establish a claim for intentional infliction of emotional distress, a party must show that "a defendant's conduct exceeds all bounds of decency tolerated by a society and the conduct causes mental distress of a very serious kind." *West v. King's Dept. Store, Inc.*, 321 N.C. 698, 704, 365 S.E.2d 621, 625 (1988). Additionally, our Supreme Court has stated that

> [o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

*Id.* at 705, 365 S.E.2d 621 (*citing, Dickens v. Puryear*, 302 N.C. 437, 447, 276 S.E.2d 325, 332 (1981), adopting the Restatement 2d of Torts § 46 definition of intentional infliction of emotional distress).

The evidence in the case before us is replete with examples of Mr. Pearce's (and Mrs. Pearce's) extreme and outrageous conduct. The evidence shows that the following acts occurred between 1980 and the time plaintiffs instituted this action.

On numerous occasions, Mr. Pearce would stand in his yard, raise his fists to the Wilsons if they were in their yard and make an obscene gesture. Mr. Pearce repeatedly cursed the Wilsons loud enough for several neighbors to hear. Mr. Pearce frequently stood in his window in full view of Mrs. Wilson and made obscene gestures with his "private parts" at her and then laughed at her reaction. At the time he was making these gestures, he "mouthed" obscene words.

Defendants have for several years piled firewood against the Wilsons' fence to the point that the firewood is taller than the fence and bulges the fence into the Wilsons' yard. The evidence shows that the Pearces do not own a fireplace and that rats inhabit the woodpile.

Mr. Pearce has on more than one occasion told both Mr. and Mrs. Wilson to "suck my dick" while rubbing his "private parts." In January 1987, Mr. Pearce accused Mr. Wilson of knocking over

WILSON v. PEARCE

[105 N.C. App. 107 (1992)]

some wood in his yard and began loudly cursing Mr. Wilson. Mr. Pearce then told Mrs. Pearce to "go get my gun." Mrs. Pearce went into the house and came back with what appeared to be a pistol covered by a towel. Mr. Wilson has also observed Mr. Pearce throwing broken glass into his yard.

The Pearces have also complained to the Durham City Housing Inspector about the condition of the Wilsons' yard. The official involved in that inspection refused to cite the Wilsons for any violations. While the inspector was present, Mr. Pearce came out of his house and began cursing Mr. Wilson in a loud voice. Also, in June 1988, the Pearces reported a "juvenile disturbance" at the Wilsons to the Durham Police Department. Upon investigation, the only juvenile police discovered at the Wilsons was their eleven day old grandchild.

On numerous occasions, Mr. Pearce cursed the Wilsons' grown children in the Wilsons' presence. On another occasion, after being informed by his wife that Mr. Wilson was working in his rosebed, Mr. Pearce yelled at Mr. Wilson "I'm gonna get me some god damn rocks and knock his god damned brains out." Mr. Pearce also fired a pistol from his yard into the Wilsons' yard in Mr. Wilson's presence. Mr. Pearce was allegedly firing at a stray dog. Since 1980, Mrs. Pearce has been photographing the Wilsons in their yard and on their property and keeping a file on the Wilsons for court purposes.

After the Wilsons filed their initial complaint in July 1989, Mr. and Mrs. Pearce continued to escalate their harassment of the Wilsons. Mr. Pearce was served with a temporary restraining order on 3 July 1989 to stop his alleged harassment of the Wilsons. However, after the restraining order, Mr. Pearce was found in willful contempt for the following acts. In August 1989, Mr. Pearce threatened to kill Mr. Wilson. Mr. Pearce also threatened another neighbor and attempted to have that neighbor arrested for criminal trespass because that neighbor was helping Mr. Wilson cut his lawn. Mr. Pearce "mowed his lawn" nine times in two weeks in August 1989 around 6:00 a.m. and parked his lawn mower as close as possible to the Wilsons' bedroom window for the purpose of disturbing the Wilsons' peace. On 14 August 1989, Mr. Pearce attempted to take out a warrant for arrest for the Wilsons' daughter, Andrea, but the magistrate refused to issue the warrant. Mrs. Pearce then filed a civil action against Andrea Wilson.

**WILSON v. PEARCE**

[105 N.C. App. 107 (1992)]

We hold that the above behaviors by the Pearces are extreme and outrageous conduct which intentionally or recklessly caused severe emotional distress to Mr. (and Mrs.) Wilson. Moreover, there was ample evidence of emotional distress and bodily harm to the Wilsons as a result of the Pearces' behavior.

The Pearces were aware that Mr. Wilson had a heart condition and takes medication for such. Mr. Wilson also has angina which arises from stress and stress-related incidents. On at least one occasion, Mr. Wilson sought medical attention from his cardiologist, Dr. Miller, for chest and arm pain from being upset and tense over a confrontation with Mr. Pearce. Dr. Miller testified in his deposition that on several occasions Mr. Wilson mentioned problems with his neighbors as the source of his stress-related angina.

Annette Wilson, the Wilson's daughter, testified that Mr. Wilson has had increased episodes of angina since Mr. Pearce began harassing them. Ms. Wilson also testified that her father is upset a great deal of the time, has lost weight and "feels afraid and has pains all over when these things happen." Moreover, when Mr. Wilson was arrested for trespass, he had to take three nitroglycerine pills for chest pain and began shaking uncontrollably.

Mr. Pearce's counsel argues in his brief that because Mr. Wilson served in the Marines as a young man, then he certainly has heard worse cursing than what Mr. Pearce said to Mr. Wilson. Counsel further argues that if Mr. Pearce is guilty of intentional infliction of emotional distress then the Marines should be also. We find this argument preposterous. Moreover, counsel's argument that the Wilsons could have just "walked away" from Mr. Pearce instead of taking the verbal abuse and degradation is ludicrous. No one in a civilized society should be expected to take the kind of harassment the evidence shows the Pearces have forced upon the Wilsons over the course of at least eight years. The fact that the Wilsons suffered so long may be attributed to their patience as well as their possible fear of reprisal from the Pearces.

For the above reasons, we hold that the trial court did not err in submitting the issue of adverse possession, malicious prosecution and intentional infliction of emotional distress by Mr. Pearce upon Mr. Wilson to the jury.

WILSON v. PEARCE

[105 N.C. App. 107 (1992)]

*Plaintiffs' Cross-Appeal*

A.

[4]    Mrs. Wilson first argues that the trial court erred in granting directed verdict in the Pearces' favor dismissing claims for intentional infliction of emotional distress by Mr. Pearce. We agree.

Under N.C. Gen. Stat. § 1A-1, Rule 50, a motion for directed verdict "tests the legal sufficiency of the evidence to take the case to the jury and support a verdict for the plaintiff." *Hill v. Winn-Dixie Charlotte, Inc.*, 100 N.C. App. 518, 520, 397 S.E.2d 347, 349 (1990) (citation omitted). The reviewing court must consider the evidence in the light most favorable to the nonmoving party. *Id.* at 520, 397 S.E.2d at 349. A motion should be "granted only if the evidence is insufficient, as a matter of law, to support a verdict for the nonmoving party." *Id.*, 397 S.E.2d 349.

The elements for intentional infliction of emotional distress are stated in section C. above. We note that foreseeability of injury or physical injury are not requirements for this tort, *Dickens*, 302 N.C. at 448-52, 276 S.E.2d at 332-35; however, these factors go to the outrageousness of a defendant's conduct. *West*, 321 N.C. at 705, 365 S.E.2d at 625.

In addition to the behaviors previously described in section C., Mr. Pearce stated to Mrs. Wilson, "I'll kill one of you if this happens again." Mr. Pearce frequently threatened Mrs. Wilson with arresting one of the Wilson children. Mr. Pearce also frequently threatened Mr. Wilson in the presence of Mrs. Wilson.

Mr. Pearce was aware that Mrs. Wilson took substantial medication. Moreover, Mr. Pearce directed threats toward Mrs. Wilson, a senior citizen, both inside and outside her home.

Dr. Miller testified in his deposition that he has treated Mrs. Wilson for chronic obstructive lung disease and hypertension for a number of years. Both conditions, according to Dr. Miller, can be aggravated by stress and that "emotional upsets . . . could cause symptoms . . . such as angina or wheezing . . . and shortness of breath."

Based upon the above evidence and viewing it in the light most favorable to Mrs. Wilson, we hold that the trial court erred in granting a directed verdict in Mr. Pearce's favor on this issue. There is ample evidence to take this issue to the jury.

WILSON v. PEARCE

[105 N.C. App. 107 (1992)]

B.

[5] Mr. and Mrs. Wilson next argue that the trial court erred in dismissing their claims under Rule 50 of the N.C. Rules of Civil Procedure against Mrs. Pearce for malicious prosecution of Mr. Wilson and intentional infliction of emotional distress of Mr. and Mrs. Wilson. We agree.

Mr. and Mrs. Wilson maintain that Mrs. Pearce is liable for the above torts based upon "civil conspiracy" incurred by entering into a conspiracy with Mr. Pearce to terrorize and falsely prosecute the Wilsons.

It is well-settled law that although there is no action for "civil conspiracy":

> A claim for damages resulting from a conspiracy exists where there is an agreement between two or more persons to do an unlawful act or to do a lawful act in an unlawful way, and, as a result of acts done in furtherance of, and pursuant to, the agreement, damage occurs to the plaintiff. *Dickens v. Puryear*, 302 N.C. 437, 276 S.E.2d 325 (1981); *Burton v. Dixon*, .259 N.C. 473, 131 S.E.2d 27 (1963). In such a case, all of the conspirators are liable, jointly and severally, for the act of any one of them done in furtherance of the agreement. *Burton, supra.*

*Fox v. Wilson*, 85 N.C. App. 292, 301, 354 S.E.2d 737, 743 (1987).

Our Supreme Court has stated that "[a]lthough civil liability for conspiracy may be established by circumstantial evidence, the evidence of the agreement must be sufficient to create more than a suspicion or conjecture in order to justify submission of the issue to a jury." *Dickens*, 302 N.C. at 456, 276 S.E.2d at 337. Viewing the evidence in the light most favorable to Mr. and Mrs. Wilson as we are required to do under Rule 50 of the N.C. Rules of Civil Procedure, we hold that the evidence is sufficient to go to the jury on the Wilsons' claims for intentional infliction of emotional distress against Mrs. Pearce.

The evidence indicates that almost any time Mr. Pearce verbally abused or threatened the Wilsons, Mrs. Pearce was either present or had told her husband that the Wilsons were outside. In this way, she assisted her husband on several occasions to continue his direct threats and abuse against the Wilsons. Further, on one

occasion she brought her husband what appeared to the Wilsons to be a gun so that Mr. Pearce could use it to threaten Mr. Wilson. Mrs. Pearce also drove surveyor-type stakes into the ground on the Wilsons' property to assert her claim for the land enclosed by the Wilsons' fence. Finally, Mrs. Pearce testified that she and her husband "worked together" to have Jay Wilson (the Wilsons' son) arrested for trespass (although he was on the Wilsons' property).

The evidence also tends to show that Mrs. Pearce conspired with her husband to have Mr. Wilson arrested for criminal trespass, which supports Mr. Wilson's claim against Mrs. Pearce for malicious prosecution. Mrs. Pearce testified regarding this issue as follows:

Q And the two of you discussed with the Magistrate the fact that you felt you owned this property?

A Right.

Q And did you talk to the Magistrate yourself?

A Carl did, I was with him.

Q But you heard what Mr. Pearce told the Magistrate?

A Oh, yes.

Q And you approved of his decision?

A Right.

Q In fact, the two of you planned to go there together?

A Right.

Q And the two of you had agreed that your purpose in doing this was to try to assert a claim to part of that land?

A Right.

Q And you agreed that the way to do this was to have Mr. Wilson arrested?

A Right.

We find that the above is sufficient evidence of Mrs. Pearce's alleged malicious prosecution to go to the jury and therefore hold that the trial court erred in directing verdict under Rule 50 in Mrs. Pearce's favor.

C.

[6] Mr. and Mrs. Wilson argue that the trial court erred in refusing to submit the issue of punitive damages to the jury. We agree.

In *Brown v. Burlington Industries, Inc.*, 93 N.C. App. 431, 378 S.E.2d 232 (1989), this Court stated:

> Punitive damages are awarded in addition to compensatory damages for the purpose of punishing the wrongdoer and deterring others from committing similar acts. *Hornby v. Penn. Nat'l Mut. Casualty Ins. Co.*, 77 N.C. App. 475, 335 S.E.2d 335, *disc. review denied*, 316 N.C. 193, 341 S.E.2d 570 (1986). Punitive damages are recoverable in tort actions only where there are aggravating factors surrounding the commission of the tort such as actual malice, oppression, gross and wilful wrong, insult, indignity, or a reckless or wanton disregard of plaintiff's rights. *Burns v. Forsyth Co. Hospital Authority*, 81 N.C. App. 556, 344 S.E.2d 839 (1986). [Punitive] damages are not recoverable as a matter of right, but only in the discretion of the jury when the evidence warrants. *Hunt v. Hunt*, 86 N.C. App. 323, 357 S.E.2d 444, *affirmed*, 321 N.C. 294, 362 S.E.2d 161 (1987).

*Id.* at 438, 378 S.E.2d at 236. Further, when there is evidence of extreme and outrageous behavior by a defendant as in a case of intentional infliction of emotional distress, the question of punitive damages is appropriate for the jury. *Id.*, 378 S.E.2d 232. In order to be "outrageous behavior," the evidence must establish some "insult, indignity, malice, oppression or bad motive." *Rogers v. T.J.X. Companies, Inc.*, 329 N.C. 226, 230, 404 S.E.2d 664, 666 (1991). Whether the evidence of outrageous conduct is sufficient to carry the issue of punitive damages to the jury is a question of law for the court. *Id.* at 231, 404 S.E.2d at 667. However, where the pleadings and evidence support a claim for punitive damages, the trial court should submit the issue to the jury to determine whether or not punitive damages in any amount should be awarded, and if so, the amount of the award. *Patrick v. Williams*, 102 N.C. App. 355, 368, 402 S.E.2d 452, 459 (1991). It is then within the jury's discretion to decide these issues. *Id.*

Applying the above principles to the present case, we find that there is sufficient evidence showing extreme and outrageous conduct by Mr. and Mrs. Pearce toward the Wilsons, as well as

"insult, indignity, malice, oppression or bad motive." We need not review the numerous incidents we have stated throughout this opinion which support our finding. Therefore, we hold that the trial court erred in not submitting the issue of punitive damages to the jury.

In conclusion, we hold that the trial court did not err in submitting to the jury the issues of adverse possession, malicious prosecution by Mr. Pearce and intentional infliction of emotional distress by Mr. Pearce upon Mr. Wilson. We further hold that the trial court erred in granting directed verdict in Mrs. Pearce's favor against Mr. and Mrs. Wilson and in directing verdict dismissing Mrs. Wilson's claims. The trial court also erred in not submitting the issue of punitive damages to the jury. For the above reasons, we affirm in part, reverse in part and remand for trial on the remaining issues.

Affirmed in part; reversed in part and remanded.

Judges JOHNSON and EAGLES concur.